Myers et al., Appellees, v. The East Ohio Gas Company, Appellant.

[Cite as Myers v. East Ohio Gas (1977), 51 Ohio St. 2d 121.]

(No. 76-1007—Decided July 20, 1977.)

*Amer, Cunningham & Brennan Co., L. P. A.*, and *Mr. Bernard J. Amer*, for appellees.

*Messrs. Jones, Day, Reavis & Pogue, Mr. H. Chapman Rose, Mr. Victor E. DeMarco, Mr. Lanty L. Smith, Mr. Michael A. Nims, Messrs. Buckingham, Doolittle & Burroughs, Mr. John M. Glenn* and *Mr. Robert W. Corp*, for appellant.

WILLIAM B. BROWN, J. The main issue presented by this cause is whether a "Supplemental Gas Storage Agreement" for a primary term, followed by a grant of uncertain

duration that conditions termination upon the occurrence of an event within the control of the "lessee," gives rise to a tenancy at will once the primary term has expired.

In the *Rayl* case, *supra* (46 Ohio App. 2d 167), the Court of Appeals for Summit County held that a gas storage agreement, terminable after a ten-year primary period upon the failure of the "lessee" to produce, store or withdraw gas from underground storage areas became a tenancy at will once the primary term expired. The *Rayl* court reasoned (1) that the gas storage agreement was "simply a rental agreement for the use of the lessor's land"; (2) that the tenancy created by that agreement was not like those created in oil and gas *drilling* agreements because it was terminable at the will of the gas company and not "by contingency or operation of the law";[1] and (3) that the law in Ohio is that "a tenancy at the will of one party is also a tenancy at the will of the other," and, therefore, that the gas storage agreement could be terminated at will by the landowners.[2] (*Rayl*, at pages 172-173.)

[1] Some jurisdictions have held that oil and gas leases terminable on contingencies such as the existence of oil or gas on the premises in "paying quantities" are not terminable upon an event in control of a lessee operating in good faith and do not, therefore, create tenancies at will. See *Cypress Creek Coal Co.* v. *Boonville Mining Co.* (1924), 194 Ind. 187, 142 N. E. 645. Since the leading oil and gas drilling cases in Ohio have dealt with contingencies clearly within the lessee's control, such as the right to surrender at any time or to cease paying annual rent (*Brown* v. *Fowler* [1901], 65 Ohio St. 507; *Gas Co.* v. *Eckert* [1905], 70 Ohio St. 127), they have been decided on other grounds.

[2] The *Rayl* opinion, *supra* (46 Ohio App. 2d 167), also refers to the lack of mutuality inherent in the storage agreement and to policy reasons which may lead courts to treat oil and gas *drilling* leases differently than they treat other leases. The former concern, more accurately described in terms of consideration, is dispensed with in *Brown*, *supra*, which holds $1 in consideration sufficient to support an option to terminate at will. And, while policy reasons have been invoked to hold gas and oil leases not to create tenancies at will, the same basic rules—regarding primary terms with options to terminate and regarding termination on a contingency within the control of one party—apply in general to non-gas and oil leases. See Annotation 137 A. L. R. 362, 366 *et seq.*

We are not persuaded by this reasoning. In the first place, it is by no means certain whether the property interest or estate created by the gas storage agreement is a tenancy.[3] Assuming, *arguendo*, that the agreement does create a tenancy, however, we do not agree that it creates a tenancy at will.

The characteristics of a tenancy at will, whether it is created by express contract or by implication of law, are "uncertainty respecting duration and the right of either party to terminate it by proper notice * * *." 3 Thompson on Real Property 33, Section 1020 (1959); *Thompson* v. *Baxter* (1909), 107 Minn. 122, 123, 119 N. W. 797; 1 Casner, American Law of Property, 229, Section 3.28 (1952); 1 Restatement of Property, Section 20 (1936); 1 Restatement of Property 2d, Section 1.6 (1976). At common law, because a fee simple could not be granted without livery of seisin, a lease purporting, without livery of seisin, to grant an estate otherwise the equivalent of a fee was ineffective to convey the estate granted. Therefore, courts treated an estate of uncertain duration, terminable at the will of the grantee, as if it were also terminable at the will of the grantor. From this treatment of estates at will arose the legal inference, which has outlasted livery of seisin, that a lease terminable at the will of one party is terminable at the will of both. *Effinger* v. *Lewis* (1859), 32 Pa. 367, 369; *Lindlay* v. *Raydure* (E. D. Ky. 1917), 239 F. 928, 942; 2 Summers, The Law of Oil & Gas, 136-137, Section 235

---

[3]Appellant argues that the interest or estate created by the storage agreement might also be an easement or a fee. Since either an easement or a fee can be created by an agreement termed a contract or a lease (*Hinman* v. *Barnes* [1946], 146 Ohio St. 497; 18A Ohio Jurisprudence 2d 446, Easements, Section 18; *Warner* v. *Tanner* [1882], 38 Ohio St. 118) and since either an easement or a fee can be of unlimited duration and subject to termination at the will of the grantee without being subject to termination at the will of the grantor (*Hinman, supra*; *School District No. 5 of Delhi* v. *Everett* [1883], 52 Mich. 314, 17 N. W. 926; 1 Restatement on Property 2d, Section 1.6, Comment *g*), it is not necessary for us to determine precisely what estate or property interest is created by the gas storage agreement if we establish that it does not create a tenancy at will.

(1959); 1 Casner, American Law of Property, *supra,* at page 231, Section 3.30. The implications of this rule are best expressed by Casner, *supra,* at pages 231 and 232:

"Coke after commenting that a lease at will must in law be at the will of both parties, stated * * * that a lease to hold at the will of the lessee 'must also be at the will of the lessor.' "

"Taken literally," Coke's proposition "would seem to state that all leases for life or in fee become leases at will if the lessee has power to terminate the lease at any time, and this literal interpretation has been used in some cases. Still, it is clear that one can create a life estate or a fee on limitation or subject to a condition, and it would seem immaterial that the event on which the estate is conditioned or limited is within the control of the owner of the estate."

Livery of seisin has, of course, long been a mere legal memory, and the rule that a lease at the will of one party is at the will of both has no other apparent usefulness. In addition to having outlived its usefulness and to having possibly barred otherwise valid grants of life estates or fees, the rule may also frustrate the intent of the parties to the lease. It is a legal commonplace that courts, in deciding the rights of parties under a written agreement, including a lease, should give effect to the unambiguously expressed intent of the parties. See *Hallock* v. *Kintzler* (1943), 142 Ohio St. 287; *Stahl* v. *Van Vleck* (1895), 53 Ohio St. 136; *Bell* v. *Panhandle Eastern Pipeline Co.* (S. D. Ind. 1976), F. Supp.      ; *Charles Ilfeld Co.* v. *Taylor* (1964), 156 Colo. 204, 397 P. 2d 748. The doctrine urged by the *Rayl* court does not promote the intention of the parties. See *Thompson* v. *Baxter, supra,* at page 123. Instead, it may thwart their intention by creating a lease terminable at the will of *both* parties even in those agreements which *clearly* and *unambiguously* provide for termination at the will of only one party. Thus, it was only after the court in *Effinger* v. *Lewis, supra,* rejected the rule that it was able to say, at page 370:

"There is nothing, therefore, to prevent us from giv-

ing effect to this contract according to the intention of the parties. If they meant to create an estate that should endure so long as the grantee, his heirs and assigns, should desire to keep it at the rent agreed upon, then such is its character; and this silences all the minor objections brought to bear on the title.''

Despite the fact that it has outlived the purpose for which it was created and that it may thwart the intent of the parties and unnecessarily block the grant of otherwise valid estates, the doctrine that a lease at the will of one party is a lease at the will of both has been adopted by a majority of American jurisdictions and has been referred to as the prevailing law by a number of commentators. Annotation, 137 A. L. R. 362, 367; 33 Ohio Jurisprudence 2d 604, Landlord and Tenant, Section 79; 51C Corpus Juris Secundum 475, Landlord and Tenant, Section 167. Ohio, however, has not adopted the rule,[4] and we decline to do so at this time. Instead, in keeping with what we perceive to be a better approach to the rule than its total acceptance or rejection and in recognition of the validity of the rule at common law, which may have been relied upon in particular cases, we elect to treat the doctrine as a presumption. Since a ''presumption cannot arise where the very terms of the * * * [agreement] are squarely to the contrary,'' *Adams Express Co.* v. *Beckwith* (1919), 100 Ohio St. 348, 357, those leases which clearly and unambiguously terminate at the will of only one party are to be controlled by their express terms. However, those leases which do not clearly state whether they are terminable at the will of one or both

---

[4] The statement in *Brown* v. *Fowler, supra* (65 Ohio St. 507), at page 523, that "a tenancy at the will of one party, is a tenancy also at the will of the other" is dictum. (The *Brown* court held an agreement for a primary term of two years with the right of the lessee to surrender the premises at any time during those two years did not create a tenancy at will before the primary term had expired but instead created a lease for two years certain with an option, made valid in contractual terms by the consideration of $1, to terminate the lease before the end of the term at the will of the lessee.) Furthermore, in *Gas Co.* v. *Eckert, supra* (70 Ohio St. 127), at pages 135, 137, this court questioned the validity of the *Brown* dictum.

parties will be presumed, in keeping with the majority rule, to be terminable at the will of both parties. Our treatment of the rule as a rebuttable presumption is in keeping with the judicial practice of giving effect to the intent of the parties where possible (*Stahl* v. *Van Vleck, supra*), with our prior treatment of perpetual leases (see *Hallock* v. *Kintzler, supra,* at page 289, stating that a lease which clearly and unequivocally grants the right of perpetual renewal will be enforced according to its terms even though perpetual leases are not favored by the law), and with our holding in *Gas Co.* v. *Eckert* (1904), 70 Ohio St. 127, that a lease terminable on the lessee's removal of its property from, and reconveyance of, the leased premises did not create a tenancy at will.

The gas storage agreement in the present cause provides that the "lessee" has the right of "introducing, injecting, storing and removing gas of any kind * * * into, in and from any and all sub-surface sands, formations or reservoirs" underlying appellees' property for "a term of ten years, and so much longer * * * as gas is being produced, stored, withdrawn or held in storage by the lessee * * *." Since the production, storage or withdrawal of gas is a contingency over which the lessee has direct control, the lease clearly grants the gas company the right to terminate at will once the ten-year primary term has expired. Moreover, the agreement does not grant the lessor the right to withdraw from the lease, except after 30 days notice on default of the lessee. The agreement, then, is clearly terminable at the will of the lessee only. Therefore, the presumption that a lease at the will of one party is a lease at the will of both does not apply, a tenancy at will is not created, and the lease will be enforced according to its express terms. The judgment of the Court of Appeals is reversed.

*Judgment reversed.*

O'NEILL, C. J., HERBERT, SWEENEY and LOCHER, JJ., concur.

P. BROWN, J., concurs in the judgment.

CELEBREZZE, J., dissents.

PAUL W. BROWN, J., concurring in the judgment.

I conclude that the interest of the appellant is protected by the clear language of the supplemental agreement granting appellant use of the storage area "for a term of ten years, and so much longer * * * as gas is * * * stored * * * in the * * * Clinton Sands Storage Area." The legality and enforceability of such an agreement was recognized by this court in *Hallock* v. *Kintzler* (1943), 142 Ohio St. 287. The agreement with the appellees is one of a myriad such made with owners of portions of the so-called Clinton Sands Storage Area, pieced together at an expense of more than $35,000,000 of ratepayers' money and essential to a storage scheme which in the past critical year provided heat for northeastern Ohio homes and businesses when other areas were in short supply. The agreement with the appellees was not terminable at will but was terminable only in the event that the overall storage scheme should be abandoned. Such agreements are critical to the storage of gas in many other areas, and both their purpose and the indefiniteness of their duration were within the ken of parties to the original agreements and of the successors in title who purchased such property with knowledge of the scheme.

CELEBREZZE, J., dissenting. Although the majority is unable to specify the nature of the beast before this court, I write separately because, in my view, the terms of the supplemental gas storage agreement are nevertheless beastly.

A majority of this court today rejects the doctrine that a lease terminable at the will of one party is a lease terminable at the will of both parties. It is, however, conceded that this view has been adopted by the great weight of authority, and referred to as the prevailing law. Rather than accept or reject this well-recognized principle, the majority assumes a mugwumpian stance and proceeds to construct a presumption of mutual termination. This novel creation is to be employed when the lease agreement does not clearly and unambiguously state that it is terminable at the

will of only one party. Surprisingly, the majority refuses to apply its presumption herein, despite the fact that nowhere in the supplemental gas storage agreement is it clearly stated that East Ohio alone has the right to terminate.

One reason given for the singular position of the majority is that the prevailing view may unnecessarily block the grant of otherwise valid estates. I thus feel constrained to point out that, by its decision, the majority allows enforcement of an agreement which actually occasions the very situation which it purportedly seeks to avoid.

When appellees purchased the property here involved, there were three well sites located on the borders of the property. Attached to the wells were, and are presently, pipelines which connect with the larger pipelines of the East Ohio system. These pipelines lie approximately three feet below the ground.

Sometime prior to the date when the complaint seeking termination of the lease was filed, appellees became aware of East Ohio's intention to drill up to five additional wells on their property. East Ohio's geologist later testified that at least two of the proposed five new wells would be drilled in the center of Myers' land, and that each well site would consist of a well head sticking up approximately three feet above the ground, upon which there would be an approximately 12 foot long cross pipe. In addition, nearby each well head would be a storage tank, approximately 12 feet in height and nine feet in diameter. The geologist indicated that these new wells would necessitate the laying of additional pipeline in a criss-cross pattern just below the Myers' property.

From their compliant it is evident that appellees were quite naturally concerned that additional well sites and pipeline right-of-ways would damage and encumber their premises, preventing them from developing their property and, most certainly, impairing the marketability of the property.[5] It is the position of East Ohio, however, that as

---

[5]Because the supplemental gas storage agreement provided that gas could be injected into the subsurface sands "* * * either through wells

long as it continues to pay to appellees the sum of $200 per well per year it may, under the terms of the supplemental gas storage agreement, continue to install well sites and lay pipelines, at its sole discretion, regardless of the effect upon the value of the property.

Although the instant case is one of first impression, it would appear that certain cases concerned with mining rights may be helpful in illustrating the proper way to resolve the differences between the parties before this court.

In *Skivolocki* v. *East Ohio Gas Co.* (1974), 38 Ohio St. 2d 244, the issue centered upon the respective rights of parties possessed of a surface estate and the underlying mineral estate. Mining rights were granted in the deed conveying the mineral estate, and an option provided "* * * that for any and all surface used by the grantee, its successors and assigns, it or they shall pay at the rate of fifty dollars per acre." This court held that the option did not give an unqualified right to use the surface, and specifically did not give grantee the right to strip mine. The court also commented, in footnote 1, at page 249, as follows: "This implied right of the mineral owner [to use as much of the surface as may be reasonably necessary to reach and remove the minerals] is best explained as a practical attempt to insure that both he, and the surface owner, can enjoy their respective estates. To construe the 'right to use' as including the right to strip mine would be to pervert the basic purpose of a principle designed to *mutually* accommodate the owner of the mineral estate and the owner of the surface estate in the enjoyment of their separate proper-

---

now located or hereafter drilled upon said premises * * * or by any other method or means whatsoever * * *," I think it apparent that a prospective purchaser of the Myers' property would not be encouraged by the possibility that at any future date the gas company might decide to install additional well heads, storage tanks or pipeline upon the property, whether or not there was a genuine need for more well sites. Indeed, East Ohio's geologist testified that without construction of the proposed five new wells the company could continue to inject and withdraw gas from the three existing wells which, as noted above, are located on the perimeters of the Myers' property.

ties. * * *" (Emphasis *sic.*) Accord *Quarto Mining Co.* v. *Litman* (1975), 42 Ohio St. 2d 73.

Upon consideration of the policy expressed in the two above-cited cases, I would hold that two conditions be placed upon East Ohio in the exercise of the rights secured under the supplemental gas storage agreement. First, I would direct East Ohio to use only as much of the surface, or to drill and install only so many wells, as are reasonably necessary to inject and remove its gas. Second, if it becomes reasonably necessary to drill and install so many wells that there will no longer be a mutual accommodation of the interests of East Ohio and the owners of the surface estate, I would order East Ohio to pay to appellees the actual value of the property it has so encumbered. In this instance the parties could either come to a private agreement upon a price for the property, or East Ohio could exercise its statutory authority[6] to take by condemnation such lands as are being used for gas storage purposes.

For the foregoing reasons, I dissent from the judgment rendered herein.

----

[6] R. C. 4161.17 provides, in part, as follows:

"Any corporation organized under the laws of Ohio for the purpose of transporting, selling, or storing gas may appropriate for use in connection with the establishment, operation or protection of a gas storage reservoir, whether located entirely or in part in a coal bearing township or elsewhere, any private property or interest therein as is necessary for the establishment, operation or protection of such reservoir. * * *"