OPINION
{¶ 1} Plaintiff-appellant, Regency Plaza, LLC ("appellant"), appeals from the judgment of the Franklin County Court of Common Pleas granting summary judgment in favor of defendant-appellee, Mardelle J. Morantz ("Morantz"), in this action for declaratory judgment. For the following reasons, we affirm.
 {¶ 2} On or about February 24, 1982, Morantz entered into a residential lease (the "lease") with Ebner Properties for an apartment in the Regency Plaza apartment *Page 2 
complex (the "property"), located at 1416 Striebel Road in Columbus, Ohio. The lease provided for a term of one year, from April 1, 1982 to March 31, 1983, and included the following renewal provision:
 * * * Unless written notice is given by LESSOR to LESSEE, or by LESSEE to LESSOR, at least thirty (30) days prior to the expiration of this Lease, then this Lease shall be automatically renewed on a month-to-month basis under the same terms and conditions as are provided herein, until a written notice is given by either party at least thirty (30) days, one (1) full calendar month, in advance of moving date. * * *
Accordingly, in the absence of a notice of termination, the lease automatically renewed monthly after its initial one-year term.
 {¶ 3} When Morantz executed the lease, Murray Ebner, Sylvia E. Ebner, Bernard R. Ruben, and Florine C. Ruben owned the property, and Ebner Properties served as property manager.[1] At all relevant times, Mark Ebner was responsible for the day-to-day management of Ebner Properties, including the day-to-day management of the property.
 {¶ 4} In August 1993, Ebner Properties informed Morantz that it intended to terminate her tenancy, effective September 30, 1993. The parties resolved the dispute underlying Ebner Properties' desire to terminate Morantz's tenancy and executed a Settlement Agreement, dated December 27, 1993 ("1993 Settlement Agreement"). Section 4 of the 1993 Settlement Agreement provides:
 So long as Morantz abides by the terms and conditions of this Agreement and abides by the terms and conditions of her lease agreement with Ebner Properties, Ebner Properties shall not take any action to evict Morantz or to terminate Morantz's tenancy or lease, provided however that *Page 3 
if the ownership of the apartment unit or the apartment building should change or should be the subject of a purchase contract, pursuant to which purchase contract the ownership will change, this Agreement shall be considered null and void and non-binding on the new owner or the person required to purchase such unit or property in any such purchase agreement; and it is further understood that should the use of the apartment building change such that the apartment building is not being used as residential lease premises, this Agreement shall become null and void.
Mark Ebner signed the 1993 Settlement Agreement on behalf of Ebner Properties, as authorized by the property owners.
 {¶ 5} In June 1995, Sylvia E. Ebner conveyed her interest in the property to Murray Ebner, and Florine C. Ruben conveyed her interest in the property to Bernard R. Ruben, leaving Murray Ebner and Bernard R. Ruben as the sole property owners. Thereafter, by deed recorded March 4, 1996, Murray Ebner and Bernard R. Ruben conveyed the property to Regency Plaza Apts. ("Regency Plaza"), an Ohio general partnership, in which they were the sole general partners.
 {¶ 6} On May 9, 2000, Ebner Properties filed a complaint in forcible entry and detainer against Morantz in the Franklin County Municipal Court, to which Morantz responded by filing a counterclaim. The parties again resolved their dispute and executed a settlement agreement and release of all claims, dated November 13, 2000 ("2000 Settlement Agreement"). The 2000 Settlement Agreement sets forth the parties' respective positions regarding Ebner Properties' attempt to evict Morantz. Ebner Properties believed that Morantz's tenancy was a month-to-month tenancy, terminable at will. In contrast, Morantz believed that Ebner Properties' attempt to terminate her tenancy violated the 1993 Settlement Agreement. In effect, the 2000 Settlement Agreement affirmed the status quo, with the parties agreeing that "the terms and *Page 4 
conditions of the Lease, as validly and legally modified by Ebner Properties over the years[,] remain in full force and effect and that the Settlement Agreement entered into between the parties on December 27, 1993 remains in full force and effect." The 2000 Settlement Agreement provides that it was "not intended, and shall not be construed, to expand Morantz's rights with respect to occupancy of the Property beyond those created by the Lease and the Settlement Agreement of December 27, 1993." Mark Ebner signed the 2000 Settlement Agreement on behalf of Ebner Properties as he was authorized to do by the property owners.
 {¶ 7} On January 28, 2005, Regency Plaza initiated this action by filing a complaint in the Franklin County Court of Common Pleas, requesting a declaration that the lease is not indefinitely renewable by Morantz and that Regency Plaza is entitled to terminate the lease upon 30 days written notice. On March 7, 2005, Morantz filed an answer and a counterclaim, requesting a declaration that, so long as she abides by the terms and conditions of the settlement agreements, Regency Plaza is not entitled to terminate her tenancy.
 {¶ 8} By deed recorded February 22, 2005, Regency Plaza conveyed the property to appellant, an Ohio limited liability company. Just as they are the sole general partners of Regency Plaza, Murray Ebner and Bernard R. Ruben are the sole members of appellant. On November 25, 2005, the trial court substituted appellant for Regency Plaza as the plaintiff in this action.
 {¶ 9} On November 5, 2005, prior to substitution of appellant as the plaintiff, Regency Plaza filed a motion for summary judgment, arguing that: (1) the lease and settlement agreements failed to create a perpetual lease and, instead, created a *Page 5 
tenancy at will, terminable by either Regency Plaza or Morantz; (2) ownership of the apartment building had changed, rendering the 1993 Settlement Agreement null and void; and (3) the lease and 1993 Settlement Agreement were defectively executed and, therefore, void. Morantz filed her own motion for summary judgment on December 2, 2005, and filed a memorandum in opposition to Regency Plaza's motion on December 5, 2005. Appellant, having been substituted as the plaintiff, filed a combined memorandum contra Morantz's motion for summary judgment and reply memorandum in support of Regency Plaza's motion on December 14, 2005.
 {¶ 10} In a decision filed January 10, 2006, the trial court partially granted appellant's motion for summary judgment and denied Morantz's motion for summary judgment. Although the trial court concluded that the lease, as modified by the settlement agreements, was not a perpetual lease, it determined that appellant was not entitled to terminate Morantz's tenancy except upon the conditions specified in the 1993 Settlement Agreement. The trial court also found that a genuine issue of material fact remained as to whether the property's ownership had changed, so as to render the 1993 Settlement Agreement void. Lastly, the trial court rejected appellant's argument that the lease was defectively executed.
 {¶ 11} On March 31, 2006, appellant moved the trial court to reconsider its decision on the parties' motions for summary judgment. Appellant urged the trial court to find that, because the lease did not clearly and unambiguously terminate only at Morantz's will, it was terminable at the will of either party as a matter of law. Appellant also requested that the trial court reconsider its finding of an issue of fact as to whether the property's ownership had changed within the meaning of the 1993 Settlement *Page 6 
Agreement. On May 5, 2006, Morantz opposed appellant's motion and filed her own motion for reconsideration, urging the court to find that the property's ownership had not changed in such a way as to render the 1993 Settlement Agreement void. Appellant filed a combined reply memorandum in support of its motion for reconsideration and memorandum in opposition to Morantz's motion on May 30, 2006.
 {¶ 12} On June 2, 2006, the trial denied appellant's motion for reconsideration and granted Morantz's motion for reconsideration. In its decision, the trial court reaffirmed its conclusion that Morantz's tenancy was terminable by appellant only upon the occurrence of one of the contingencies specified in the 1993 Settlement Agreement. The court reconsidered its prior finding of an issue of fact as to whether a change in ownership had occurred, as contemplated by the 1993 Settlement Agreement. Upon reconsideration, the trial court concluded that no such change had occurred and that the 1993 Settlement Agreement remained in effect, thus precluding appellant from terminating Morantz's tenancy. The trial court issued a final judgment entry, granting Morantz's motion for reconsideration and motion for summary judgment, on July 19, 2006.
 {¶ 13} Appellant filed a timely notice of appeal and now presents four assignments of error for review:
 Assignment of Error No. 1.
 The trial court erred by determining that the residential lease at issue is not terminable at the will of plaintiff-appellant (landlord) or defendant-appellee (tenant).
 Assignment of Error No. 2.
 The trial court erred by determining that ownership of the subject property had not transferred within the meaning of *Page 7 
the December 27, 1993 Settlement Agreement thus entitling plaintiff-appellant to terminate the subject lease. *Page 8 
 Assignment of Error No. 3.
 The trial court erred in failing to determine that the subject lease was defectively executed.
 Assignment of Error No. 4.
 The trial court erred by finding that plaintiff-appellant did not timely reply to (a) defendant-appellee's memo contra to appellant's motion for reconsideration; and (b) defendant-appellee's motion for reconsideration.
 {¶ 14} In its first three assignments of error, appellant contests the trial court's disposition of the parties' motions for summary judgment. Appellate review of summary judgments is de novo. Koos v. Cent. OhioCellular, Inc. (1994), 94 Ohio App.3d 579, 588, citing Brown v. SciotoCty. Bd. of Commrs. (1993), 87 Ohio App.3d 704, 711. When an appellate court reviews a trial court's disposition of a summary judgment motion, it applies the same standard as the trial court and conducts an independent review, without deference to the trial court's determination. Maust v. Bank One Columbus, N.A. (1992),83 Ohio App.3d 103, 107; Brown at 711. Summary judgment is appropriate only where: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the non-moving party, reasonable minds can come to but one conclusion, that conclusion being adverse to the non-moving party. Harless v. Willis Day Warehousing Co. (1978),54 Ohio St.2d 64, 66.
 {¶ 15} In its first assignment of error, appellant contends that the trial court erred by determining that the lease was not terminable at will by appellant. While the trial court determined that the lease, as modified by the settlement agreements, does not constitute a perpetual lease because the right to terminate is not exclusively reserved to *Page 9 
Morantz, the court held that the language of the 1993 Settlement Agreement negated the conclusion that the lease was terminable at will by either party. Rather, the trial court found that Morantz's tenancy was terminable at will by Morantz and terminable by appellant upon the occurrence of a condition specified in the 1993 Settlement Agreement.
 {¶ 16} Appellant agrees with the trial court's conclusion that the lease does not clearly and unambiguously create a right of perpetual renewal, but contends that the lease must, therefore, be presumed terminable at will by either party. Morantz responds that appellant's interpretation of the parties' respective rights to terminate her tenancy ignores the parties' intent, as established by the clear and unambiguous terms of the lease and 1993 Settlement Agreement.
 {¶ 17} In support of its first assignment of error, appellant relies, inter alia, on the Ohio Supreme Court's opinions in Hallock v.Kintzler (1943), 142 Ohio St. 287, and Myers v. East Ohio Gas (1977),51 Ohio St.2d 121, and on the Fourth District Court of Appeals' opinion inPresident Trustees of the Ohio Univ. v. The Athens Livestock Sales,Inc. (1961), 115 Ohio App. 21.
 {¶ 18} In Hallock, the Ohio Supreme Court was called upon to determine whether a lease provided the lessee a right of perpetual renewal. At paragraphs one and two of the syllabus, the Supreme Court held that "[p]erpetual leases are not favored by the law" and that "[a] lease will not be construed to create a right to perpetual renewal unless the language employed clearly indicates that it was the intention of the parties so to do." The Hallock lease provided for a one-year term that "`may be renewed from year to year at the same rental at the option of the lessee, provided, however, that said *Page 10 
lessee shall give thirty (30) days written notice to the lessor of his intention so to renew.'" Id. at 288. The lessee contended that such language created a perpetual lease, renewable at his option during his lifetime, whereas the lessor argued that the lessee had the right to only a single, one-year renewal. The Supreme Court agreed with the lessor, noting that "general covenants as to right of renewal are * * * usually limited to a single renewal unless an intention to create a perpetuity is clearly shown." Id. at 289. The court found that the above-quoted language did not clearly and unambiguously create a right to perpetual renewal.
 {¶ 19} In President Trustees of Ohio Univ., at 22, the Fourth District likewise considered whether a lease granted a right of perpetual renewal when it provided for a stated duration of three years "and thereafter on a year to year basis until terminated by the lessees by one month's notice in writing to the lessors thirty days prior to [the renewal date]." After noting the general rule disfavoring perpetual leases and stating that "[a] lease will, if possible, be so construed as to avoid a perpetuity by renewal[,]" the court focused on the unambiguous language of the lease. Id. at 22-23. The court stated:
 While strongly in favor of the principles of the Hallock case, we are bound by the terms of the instrument and must give credence to the expressions therein indicating the intentions of the parties to enter into a covenant for permanent renewal. To do otherwise would be to force a construction that is not clearly apparent on the face of the lease.
(Emphasis sic.) Id. at 23. The court concluded that the parties, by clearly requiring a positive act by the lessees to end the tenancy, intended to enter a perpetual lease. In distinguishing the lease before it from the lease in Hallock, the Fourth District noted that, whereas the Hallock lease required a positive act by the lessee to renew the tenancy, *Page 11 
the President Trustees lease automatically renewed upon the expiration of each one-year term without any action by the lessee.
 {¶ 20} In Myers, the Supreme Court considered whether a Supplemental Gas Storage Agreement for a primary term, followed by a grant of uncertain duration that conditioned termination upon the occurrence of an event within the lessee's control, gave rise to a tenancy at the will of either party after the primary term expired. Myers did not involve a right of perpetual renewal but, rather, addressed who possessed the authority to terminate the tenancy. The Supreme Court declined to adopt the legal rule, followed by a majority of American jurisdictions, that a lease terminable at the will of one party is terminable at the will of both because such a rule could frustrate the parties' intent. Whereas "courts, in deciding the rights of parties under a written agreement, including a lease, should give effect to the unambiguously expressed intent of the parties[,]" the Supreme Court reasoned that the majority rule "may thwart [the parties'] intention by creating a lease terminable at the will of both parties even in those agreements whichclearly and unambiguously provide for termination at the will of only one party." (Emphasis sic.) Id. at 125. Therefore, the court elected to treat the majority rule as a rebuttable presumption, holding that "those leases which do not clearly state whether they are terminable at the will of one or both parties will be presumed, in keeping with the majority rule, to be terminable at the will of both parties." Id. at 126-127. The court stated that its treatment of the majority rule as a rebuttable presumption was in keeping with the judicial practice of giving effect to contracting parties' intentions where possible and in keeping with the court's treatment of perpetual leases inHallock. *Page 12 
 {¶ 21} The term of the Supplemental Gas Storage Agreement inMyers was for "`a term of ten years, and so much longer * * * as gas is being produced, stored, withdrawn or held in storage by the lessee.'" Id. at 127. When considering the contractual language, the Supreme Court stated:
 * * * Since the [contingency upon which termination is premised] is a contingency over which the lessee has direct control, the lease clearly grants the [lessee] the right to terminate at will once the ten-year primary term has expired. Moreover, the agreement does not grant the lessor the right to withdraw from the lease, except after 30 days notice on default of the lessee. The agreement, then, is clearly terminable at the will of the lessee only. Therefore, the presumption that a lease at the will of one party is a lease at the will of both does not apply, a tenancy at will is not created, and the lease will be enforced according to its express terms. * * *
Id.
 {¶ 22} The lease here, as executed in 1982, provided for automatic, monthly renewals until either the lessor or the lessee gave written notice of an intent to terminate the tenancy. Thus, under the original renewal terms, either party could terminate Morantz's month-to-month tenancy by giving the specified notice. However, the 1993 Settlement Agreement altered the lessor's right to terminate Morantz's tenancy because, as authorized by the property owners, Ebner Properties agreed to take no action to evict Morantz or to terminate her tenancy. Although generally eliminating the lessor's right to terminate Morantz's tenancy, the 1993 Settlement Agreement identified three situations in which it would be rendered null and void. Specifically, the 1993 Settlement Agreement provided that it would become null and void if: (1) the ownership of the apartment unit or the apartment building should change; (2) the apartment unit or the apartment building should be the subject of a purchase contract pursuant to which *Page 13 
ownership would change; or (3) the use of the apartment building changed from residential lease premises. Despite the 1993 Settlement Agreement's provision of three contingencies upon which the lessor would regain authority to terminate Morantz's tenancy, the parties clearly agreed that, in the absence of one of those contingencies, the lessor forfeited its right to terminate Morantz's tenancy.
 {¶ 23} Because neither the lease nor the 1993 Settlement Agreement unequivocally places all rights to terminate the tenancy with Morantz, the trial court correctly determined that the parties' agreements did not create a perpetual lease. Based on the absence of a perpetual lease, appellant contends that the presumption arises that Morantz's tenancy was terminable at the will of either party. Appellant would have this court ignore the parties' intentions, as expressed in the clear and unambiguous language of the 1993 Settlement Agreement, and conclude that appellant retains the unfettered right to terminate Morantz's lease at will. Appellant's contention is unpersuasive. The lack of a perpetual lease does not require the conclusion that Morantz's tenancy was terminable at will by appellant.
 {¶ 24} A common thread through the cases discussed above is the court's duty to give effect to the unambiguously expressed intent of the parties when construing a lease. For example, although perpetual leases are not favored, the Supreme Court recognized in Hallock that a clear intention to create a perpetuity is enforceable. In President Trustees, at 23, the court found itself "bound by the terms of the instrument" and stated that it "must give credence to the expressions therein indicating the intentions of the parties to enter into a covenant for permanent renewal." Moreover, in Myers, at 125, the Supreme Court declined to adopt the majority position with respect to *Page 14 
tenancies at will because it "does not promote the intention of the parties." In accordance with such cases, we must give effect to the expressed intentions of the parties and not disregard those intentions in favor of a contrary presumption.
 {¶ 25} The parties' intentions are clearly and unambiguously expressed in the lease and the 1993 Settlement Agreement. In the 1993 Settlement Agreement, the lessor unequivocally waived the right to terminate Morantz's tenancy at will. The parties' clear intention was that, in the absence of a specified contingency rendering the 1993 Settlement Agreement void, the lessor had no authority to terminate Morantz's tenancy, which automatically renewed on a month-to-month basis. The lease and 1993 Settlement Agreement present no ambiguity as to who may terminate Morantz's tenancy, and there is nothing to prevent this court from giving effect to the parties' intentions. In the absence of a specific contingency, the lease is terminable only at the will of Morantz; therefore, the presumption that a lease at the will of one party is a lease at the will of both does not apply, and a tenancy at will is not created. Accordingly, we find no error in the trial court's conclusion that Morantz's tenancy was not terminable at the will of appellant absent one of the contingencies specified in the 1993 Settlement Agreement, and we overrule appellant's first assignment of error.
 {¶ 26} In its second assignment of error, appellant contends that the trial court erred by determining that the 1993 Settlement Agreement had not been rendered null and void as a result of changes in the property's ownership. Appellant argues that the 1996 transfer from Murray Ebner and Bernard R. Ruben to Regency Plaza, a general partnership, effectuated a change in ownership, sufficient to void the 1993 Settlement Agreement. Similarly, appellant contends that the 2005 transfer from Regency Plaza to *Page 15 
appellant, a limited liability company, effectuated a change in ownership, sufficient to void the 1993 Settlement Agreement.
 {¶ 27} While recognizing that, subsequent to the 1993 Settlement Agreement, title to the property transferred from Murray Ebner and Bernard R. Ruben to Regency Plaza and, then, from Regency Plaza to appellant, the trial court found that such transfers were not the types of change in ownership contemplated in the 1993 Settlement Agreement. Specifically, the trial court concluded that a mere transfer of the property to an entity owned entirely by the previous property owners was insufficient to void the 1993 Settlement Agreement.
 {¶ 28} The 1993 Settlement Agreement constitutes a binding contract between the parties. See Associated Estates Realty Corp. v. Roselle
(June 22, 1999), Franklin App. No. 98AP-1133, citing State v. Butts
(1996), 112 Ohio App.3d 683. The primary goal in contract construction is to give effect to the intentions of the contracting parties.Kelly v. Med. Life Ins. Co. (1987), 31 Ohio St.3d 130, 132. Although the intent of the parties is ordinarily presumed to reside in the language they chose to employ in the agreement, where the language is unclear or ambiguous, or where circumstances surrounding the agreement invest the language with a special meaning, courts may resort to extrinsic evidence in its effort to give effect to the parties' intentions. Id.
 {¶ 29} The 1993 Settlement Agreement does not define ownership, which is commonly understood to mean "[t]he collection of rights allowing one to use and enjoy property, including the right to convey it to others." Black's Law Dictionary (7th Ed. 1999) 1131. Appellant cites various provisions of R.C. Chapter 1705, defining the rights of partners in a partnership and the rights of members in a limited liability company, in *Page 16 
support of its theory that the transfer of title from Murray Ebner and Bernard R. Ruben to Regency Plaza and from Regency Plaza to appellant constituted changes in ownership, as contemplated by the 1993 Settlement Agreement. However, the language of the 1993 Settlement Agreement suggests contemplation of more than a change in the type of entity holding title to the property before the 1993 Settlement Agreement may be rendered null and void. As background for the 1993 Settlement Agreement, it is stated that Ebner Properties (as authorized by the property owners, Murray Ebner and Bernard R. Ruben) desired to permit Morantz to remain a tenant, conditioned on her compliance with the terms of the 1993 Settlement Agreement and the lease. The provision regarding a change in ownership suggests Ebner Properties' concern that its agreement with Morantz not prevent a future sale or transfer of ownership to an unrelated party. Upon review, we find that ambiguity in the 1993 Settlement Agreement and special circumstances concerning the interrelationship between the parties here warrant the consideration of extrinsic evidence to determine the parties' intentions under the 1993 Settlement Agreement.
 {¶ 30} We agree with the trial court's conclusion that the 1996 transfer from Murray Ebner and Bernard R. Ruben to Regency Plaza did not void the 1993 Settlement Agreement. The 2000 Settlement Agreement is instructive regarding the parties' intentions and understanding of the change in ownership contingency in the 1993 Settlement Agreement. When the parties executed the 2000 Settlement Agreement, the transfer of the property from Murray Ebner and Bernard R. Ruben to Regency Plaza, had already occurred. Nevertheless, in contradiction to appellant's current argument that the transfer to Regency Plaza voided the 1993 Settlement *Page 17 
Agreement, the parties expressly agreed "that the terms and conditions of the Lease, as validly and legally modified by Ebner Properties over the years[,] remain in full force and effect and that the Settlement Agreement entered into between the parties on December 27, 1993 remains in full force and effect." Thus, at a minimum, the express terms of the 2000 Settlement Agreement preclude any finding that the transfer from Murray Ebner and Bernard R. Ruben to Regency Plaza nullified the 1993 Settlement Agreement.
 {¶ 31} We likewise find no error in the trial court's conclusion that the 2005 transfer from Regency Plaza to appellant did not void the 1993 Settlement Agreement. In his affidavit, Murray Ebner explained that the transfers to Regency Plaza and, subsequently, to appellant were undertaken solely to facilitate financing and were not intended to circumvent either of the settlement agreements. Like the 1996 transfer, the 2005 transfer to appellant resulted in a change in the form of entity holding title, but not in ultimate control of the property, which remained with Murray Ebner and Bernard R. Ruben. Although title passed from Murray Ebner and Bernard R. Ruben, personally, to a general partnership and then to a limited liability company, Murray Ebner and Bernard R. Ruben were the sole general partners of the general partnership and the sole members of the limited liability company. Thus, they collectively retained control over the property at all relevant times.
 {¶ 32} Nothing in the 1993 Settlement Agreement suggests that Murray Ebner, Bernard R. Ruben, and/or Ebner Properties may, of their own accord, render their promises to Morantz void by simply changing the form of entity holding title to the property. Nor does any extrinsic evidence in the record suggest that the parties to the *Page 18 
1993 Settlement Agreement intended such a result. Given the parties' agreement that the transfer of title to Regency Plaza did not void the 1993 Settlement Agreement, Murray Ebner's testimony that neither transfer of title was undertaken to circumvent the settlement agreements, and the fact that Murray Ebner and Bernard R. Ruben retained complete control of all entities holding title to the property, we find no error in the trial court's conclusion that no change in ownership, within the meaning of the 1993 Settlement Agreement, occurred. Accordingly, we overrule appellant's second assignment of error.
 {¶ 33} In its third assignment of error, appellant argues that the trial court erred by not concluding that the lease was defectively executed in contravention of the applicable version of the statute of conveyances, R.C. 5301.01. The version of R.C. 5301.01 in effect when appellant entered into her lease and when the parties executed the 1993 Settlement Agreement required that a lease of an interest in real property for a term of three years or longer be signed by the lessor, with such signing attested by and acknowledged by the lessor before a specified official. Appellant argued that the lease was not acknowledged before a notary or attested by two witnesses, and the 1993 Settlement Agreement was not attested by two witnesses. For those reasons, appellant contends that both the lease and the 1993 Settlement Agreement are void and that Morantz's tenancy, as a result, is a month-to-month tenancy, terminable at will by either Morantz or appellant. Morantz, on the other hand, argues that R.C. 5301.01 is inapplicable to both the lease and the 1993 Settlement Agreement. Morantz further argues that, even if the requirements of R.C. 5301.01 applied to the lease, an equitable leasehold was created as a result of the parties' performance. *Page 19 
 {¶ 34} While we acknowledge this court's previous statement that "[a] one-year lease which provides for automatic extensions is a lease for more than three years for purposes of R.C. 5301.01 and 5301.08[,]" seeZunshine v. Wallace F. Ackley Co. (Mar. 30, 2000), Franklin App. No. 99AP-531, fn. 1, citing Barclay Petroleum, Inc. v. Perry (May 31, 1990), Muskingum App. No. CA-89-7, we need not reach that issue here. Even assuming that the lease was defectively executed, it created an equitable leasehold.
 {¶ 35} A defectively executed lease is invalid and does not operate to convey the estate or create the term of leasehold sought to be created thereby. Delfino v. Paul Davies Chevrolet, Inc. (1965),2 Ohio St.2d 282, 284; Wineburgh v. Toledo Corp. (1932), 125 Ohio St. 219. Nevertheless, an imperfectly executed lease may operate to create an equitable estate in the lessee where the instrument was intended as a lease and was accepted and treated as such by the lessee. Schloss v.Brown (1920), 13 Ohio App. 294. In Cimco Dev. Co. v. Jeff Miller Co.,Inc. (Feb. 10, 1977), Franklin App. No. 76AP-795, citingSchloss, this court held that, where leasing parties treated a lease executed without the formalities of R.C. 5301.01 as an enforceable lease by making and accepting required payments thereunder, an equitable estate was created in the lessee, "which estops the plaintiff from denying the existence and the validity of the lease."
 {¶ 36} More recently, this court has stated that, where a purported lessee takes possession under a defectively executed lease and pays rent, "`a tenancy will be implied and is subject to all of the terms of the purported lease except duration.'" Zunshine, quoting Ruben v. S.M. N. Corp. (1993), 83 Ohio App.3d 80, 83. The *Page 20 
duration of the term is determinable by the provisions for payment of rent, so a lease providing for annual rent creates a tenancy from year to year, whereas a lease providing for monthly rent creates a tenancy from month to month. Wineburgh at 222. Here, there is no doubt that the parties intended the lease to operate as such and that they treated the lease as enforceable despite any alleged deficiencies, performing according to its terms for over 20 years. In addition to Morantz's continual possession of the premises and payment of rent, the parties referred to the lease as such and reiterated its enforceability in both the 1993 and 2000 Settlement Agreements. Moreover, in the 2000 Settlement Agreement, the parties specifically agreed that the terms and conditions of the lease remained in full force and effect. Accordingly, regardless of whether the lease was executed properly, the lease operated to create an equitable, month-to-month tenancy, subject to all lease terms except for duration.
 {¶ 37} We next consider appellant's argument that the 1993 Settlement Agreement was subject to the requirements of R.C. 5301.01, to which Morantz responds by arguing that the 1993 Settlement Agreement was not a lease of an interest in real property. We agree with Morantz.
 {¶ 38} In Schofield v. John R. Thompson Co. (C.A.6, 1940),109 F.2d 432, the Sixth Circuit Court of Appeals considered whether modifications to the rental provisions of a lease, including a reduction in rent and the insertion of a provision giving the lessor an option to cancel the lease, were required to satisfy Ohio's statute of conveyances. Because it found that the modifications did not constitute leases, the court held that they were not subject to the statute. Specifically, the court found that the grant of an option to cancel conveyed no interest in real property. Rather, the Sixth Circuit determined *Page 21 
that the modifications were mere executory agreements, unaffected by the statute of conveyances and the formalities required thereby.
 {¶ 39} The First District Court of Appeals has also considered whether a lease modification must comply with R.C. 5301.01. In Cuvier Press Clubv. Fourth Race St. Assoc, Ltd. (1981), 1 Ohio App.3d 30, 35, the parties negotiated a modification to lease terms regarding the lessor's provision of air conditioning and heat for the leased premises. The plaintiff argued, in part, that the modification was unenforceable because it was not executed in accordance with R.C. 5301.01. The court stated that its determination turned on the meaning of an interest in real property, as contemplated in R.C. 5301.01. After reviewing the common law of lease agreements, the court found that a modification to a lease constitutes a conveyance of an interest in real property, and requires compliance with R.C. 5301.01, only where it alters fundamental possessory interests, i.e., the physical space of the leased premises or the duration of the lease. The court determined that the modification regarding air conditioning and heating did not alter such fundamental possessory interests and, therefore, did not constitute an interest in real property and was not subject to the requirements of R.C. 5301.01.
 {¶ 40} Although a lease modification that attempts to modify a lease from a month-to-month tenancy to a term of years may constitute a conveyance of an interest in land, subject to the statute of conveyances, see Star Bank, N.A. v. Bakonyi (July 22, 1991), Butler App. No. CA90-06-110, Ohio courts have concluded that the exercise of a contractual option to renew a lease does not require compliance with the statute of conveyances. See Heifner v. Heifner (Nov. 28, 1989), Allen App. No. 1-88-32 ("where *Page 22 
the original lease contained an option for renewal, the acceptance of the option, despite a modification of payment terms, did not require a formal execution"); SAS v. DeWine (Nov. 8, 1991), Greene App. No. 90-CA-128.
 {¶ 41} The 1993 Settlement Agreement simply reflected Ebner Properties' agreement to not exercise its contractual right to terminate Morantz's month-to-month tenancy. Like the addition of a right to cancel in Schofield and the exercise of an option to renew in Heifner, the agreement to not exercise the right to terminate Morantz's tenancy does not convey an interest in real property. Although it may ultimately affect the duration of Morantz's tenancy, the parties' agreement regarding the right to terminate the tenancy is separate and distinct from the term itself, which remains month to month regardless of whether the tenancy was terminable only by Morantz or by both Morantz and appellant. Therefore, we conclude that the 1993 Settlement Agreement was not subject to the requirements of R.C. 5301.01.
 {¶ 42} There is no reason that the parties' agreement regarding the right to terminate Morantz's tenancy may not be given effect under the equitable leasehold. Accordingly, any failure to comply with the requirements of R.C. 5301.01 does not invalidate the parties' executory agreement regarding the right to terminate Morantz's equitable month-to-month tenancy. Consequently, any absence of R.C. 5301.01
formalities attending execution of the lease would not alter the appropriateness of the trial court's ultimate conclusion that Morantz's tenancy was terminable at will by Morantz and was terminable by appellant only upon the occurrence of one of the specified contingencies in the 1993 Settlement Agreement. Therefore, we overrule appellant's third assignment of error. *Page 23 
 {¶ 43} Finally, in its fourth assignment of error, appellant argues that the trial court erred by stating, in its June 2, 2006 decision on the parties' motions for reconsideration, that appellant did not timely file a reply memorandum in support of its motion and a memorandum contra Morantz's motion. On May 24, 2006, the trial court signed an agreed entry permitting appellant to file its memoranda through May 29, 2006. Appellant filed such memoranda on May 30, 2006. Because May 29, 2006 was Memorial Day, a legal holiday, appellant was entitled to file its memoranda the following day pursuant to Civ.R. 6(A). Nevertheless, despite its error regarding the timeliness of appellant's memoranda, the trial court reviewed the memoranda and stated that their contents did not affect its opinion on the motions for reconsideration. Accordingly, any error in the trial court's determination of timeliness is harmless given its consideration of appellant's memoranda and our de novo review of the record. See Natl. City Bank, Columbus v. Williams (May 19, 1998), Franklin App. No. 97APG09-1271. We therefore overrule appellant's fourth assignment of error.
 {¶ 44} For the foregoing reasons, we overrule each of appellant's assignments of error, and affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
BRYANT and McGRATH, JJ., concur.
[1] In 1982, Ebner Properties was a trade name under which Murray Ebner operated; sometime thereafter, Ebner Properties, Limited was formed. We refer to both entities as "Ebner Properties." *Page 1