JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Appellant, Mid-America Management Corporation ("Mid-America"), appeals the trial court's decision, rendered in favor of appellee, Mapletown Foods, Inc. ("Mapletown"). After a thorough review of the arguments, and for the reasons set forth below, we affirm.
 {¶ 2} On July 22, 2004, Mapletown filed a complaint for declaratory judgment, which involved the parties' commercial lease. The lease required Mapletown to pay rent to Mid-America based on a percentage of its gross sales. Previously, on or about November 2003, at Mid-America's request, a third party conducted an audit of Mapletown's financial records. As a result of the audit, Mid-America claimed that Mapletown failed to report a variety of items, including liquor and lottery ticket sales, in its gross sales. In its complaint, Mapletown requested that the trial court rule that all gross receipts from Mapletown's retail sale of liquor be excluded for purposes of calculating percentage rent due to Mid-America under the parties' commercial percentage lease.
 {¶ 3} On January 1, 2005, Mid-America filed an answer and counterclaim, alleging it had suffered damages in excess of $200,000 as a result of Mapletown's refusal to remit monies owed under the parties' commercial percentage lease for reported gross sales of liquor (and lottery tickets).[1] *Page 4 
 {¶ 4} On April 12, 2005, both parties agreed to submit the contract dispute to the trial court for a dispositive ruling on the briefs. In accordance with a statute that specifically excludes lottery sales from the calculation of gross sales used to determine rental payments, both parties stipulated that it was improper for Mid-America to demand that all lottery sales be included in Mapletown's gross annual sales.
 {¶ 5} Mapletown alleged that 1) the parties's lease is ambiguous regarding the calculation of liquor sales, thus a liquor exclusion should be read into the agreement; and 2) sales of liquor should be treated like lottery sales for purposes of calculating percentage rent. Mid-America asserted that the lease was unambiguous and required payment of percentage rent on all gross sales of all merchandise, services, and other things of value, including liquor, and that gross sales are to be calculated under the plain terms of the parties' contract and not in accordance with any extrinsic evidence or statutory scheme under an unrelated statute governing lottery sales.
 {¶ 6} On June 28, 2005, the trial court issued a final and dispositive judgment entry concluding that only the commissions for liquor sales were to be used to calculate the rent payments due. A timely appeal by Mid-America followed, but was dismissed on May 4, 2006 on the grounds that the judgment entry was not a final *Page 5 
appealable order. The parties then filed a joint motion for final order, which was granted on July 5, 2006. Notice of appeal was filed on July 25, 2006.
 {¶ 7} The facts that give rise to this case began in 1990. Mid-America is the property owner and landlord of the premises, which Mapletown leases and uses as a full-service grocery store. Mapletown and Mid-America entered into a lease agreement for the premises on February 2, 1990. On or about May 1994, Mapletown entered into a contract with the Department of Liquor Control and became an authorized agent of the state of Ohio, authorized to conduct spiritous liquor transactions on behalf of the state. This agreement is similar to the agreement between Mapletown and the Ohio Lottery Commission regarding the sale of lottery tickets. The state pays Mapletown a commission for the sale of liquor and lottery tickets, therefore the transactions are not included in Mapletown's gross sales.
 {¶ 8} The lease between the parties was amended and extended in 1994. Despite the fact that Mapletown began selling liquor in 1994, it did not negotiate or contract for a liquor exclusion clause. The lease contains a merger clause that the terms contracted for by the parties were to be the exclusive and complete understanding of the parties. The second amendment and extension of the lease, signed on August 11, 1999, sets forth the parties' explicit agreement. Except for adjustments to base and percentage rent, the parties had ratified and confirmed all terms, covenants, and conditions set forth under the lease. *Page 6 
 {¶ 9} Under the terms of the second amendment and extension, beginning on June 1, 2000, Mapletown was to pay Mid-America two percent of its gross sales over the base amount of $5,000,000 as percentage rent. Under the lease since 1990, "gross sales" is "the total amount in dollars of actual sales price * * * of all sales of merchandise and services * * * and all other receipts or things of value * * *."
 {¶ 10} Mid-America brings this appeal, asserting one assignment of error:
 {¶ 11} "I. The lease agreement between Mapletown and Mid-America is clear and unambiguous and the trial court erred by construing as a matter of law that only commissions and not gross receipts for the sale of liquor should be considered when determining percentage rent."
 {¶ 12} Mid-America argues that the trial court erred when it ruled that only the commissions for liquor sales were to be used to calculate the rent payments due appellant. More specifically, it argues that gross sales of liquor should be included in the calculation of the term "gross sales" in order to determine the amount of rent due. We disagree.
 {¶ 13} Under R.C. 4301.17, the Ohio Department of Liquor Control ("the Department") can contract with mercantile businesses to sell liquor. The Department provides the liquor, and the private business sells it. All such transactions must be made at a separate register and kept on a separate account from other transactions. Monies received from the sale of liquor are deposited into a Department of Liquor Control Account, accessible only by the Department. The *Page 7 
Department then pays the agency a commission. In re Scott (1990),69 Ohio App.3d 585, 591 N.E.2d 312. At trial, Terry Poole, Chief of Agency Operations for the Ohio Department of Commerce, Department of Liquor Control, submitted an affidavit attesting to the fact that liquor sales are sales by the state, not by Mapletown.
 {¶ 14} Brennan v. Lourub Pharmacy, Inc. (1974), 76 Lab. Cas. (CCH) 4|33, 200, held that liquor sales should not be included in the gross sales calculation for the purpose of subjecting a drug store to the Fair Labor Standard Act:
 {¶ 15} "[M]ore importantly, the receipts of the sales from defendants' liquor agency are deposited, in toto, in a bank account in the name of the Department of Liquor, State of Ohio. As such, this Court cannot accept plaintiff's argument that said receipts should be added to the receipts from defendants' drug store operation, nor is there any unity whatsoever as to said funds. It defies logic to combine the assets ofthe drug store operation, which are earnings of the defendants, andreceipts of the liquor agency, which are the sole property of the Stateof Ohio, to bring defendants under the Fair Labor Standards Act." Id. (Emphasis added.)
 {¶ 16} While Brennan was later overruled on interpretation of the Fair Labor Standards Act, its reasoning still applies to this case. It would defy logic to combine the gross sales of Mapletown with gross liquor receipts, which are the property of the state of Ohio, to calculate the rent. Because the sales of liquor were sales made by the state, and not its agent Mapletown, the gross sales should not be included in the rent calculation. *Page 8 
 {¶ 17} Traditional contract law requires the same result. "In construing and interpreting the provisions of percentage leases, the courts have applied traditional contract principles." Myers v. East OhioGas (1977), 51 Ohio St.2d 121. In Lutz v. Carter (1990), 2nd Dist. App. No. 2660, the court found that the parties "did not have a common understanding as to the definition of `gross receipts' for purposes of calculating the rent." That court held:
 {¶ 18} "In order for a valid, binding contract to exist, there must be a meeting of the minds between the parties or a manifestation of mutual assent. The parties to an agreement must manifest an intention to be bound by the terms of the agreement. Enforceability of a lease agreement depends upon whether the parties have manifested an intention to be bound by its terms and whether these intentions are sufficiently definite to be specifically enforced.
 {¶ 19} "* * *
 {¶ 20} "We find that there is enough ambiguity in the language to make each party's contrary understanding reasonable. Therefore, we conclude that the trial court was correct in finding that there was no meeting of the minds on this provision, which both parties agree was essential to the contract." Id.
 {¶ 21} Mapletown and Mid-America clearly do not have a common understanding as to the definition of "gross receipts" for the purpose of calculating rent. Further, "[t]he object of contract construction and interpretation is to ascertain *Page 9 
and effectuate the intent of the parties to the agreement when drafted."Downtown Associates, Ltd. v. Burrows Bros., Co. (1986),34 Ohio App.3d 296, 297, 518 N.E.2d 564, 566. Because Mapletown did not begin selling liquor until 1994, the parties clearly could not have contemplated or intended that Mid-America would be profiting from the percentage of gross liquor sales when the contract was formed. No meeting of the minds could have existed as to liquor transactions, and there is enough ambiguity that each party's understanding is reasonable.
 {¶ 22} Additionally, "[i]n the construction of a written contract, it will be read as a whole, and the intent of each part will be gathered from a consideration of the whole. The language and terms of the contract are to be given their plain, common, and ordinary meanings. But if the language is ambiguous, the court must construe the language against the party who prepared the contract. Language is ambiguous if it is reasonably susceptible to two or more constructions." McClorey v.Hamilton Cty. Bd. of Elections (1998), 130 Ohio App.3d 621, 624,720 N.E.2d 954, citing Worth v. Aetna Casualty Surety Co. (1987),32 Ohio St.3d 238, 240. Because the parties are clearly construing the lease differently, and it is susceptible to two constructions, the provision should be construed against Mid-America.
 {¶ 23} Finally, the term "gross sales," as defined in the lease, does not mention agency transactions. "Gross sales" is defined as "sales of merchandise * * * which tenant in the normal and customary course of business would credit or attribute to its business upon the Leased Premises." Mapletown does not sell the *Page 10 
liquor. The state sells the liquor and Mapletown acts as an agent, receiving a commission. Mapletown does not include liquor in its inventory and does not report liquor sales for tax purposes. Accordingly, we find that Mapletown is not required to use gross sales from the sale of liquor when calculating percentage rent due under the lease agreement with Mid-America.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
SEAN C. GALLAGHER, J., and MARY EILEEN KILBANE, J., CONCUR.
[1] The parties have resolved all issues relative to lottery sales and the other remaining issues that formed the basis for this litigation, except for the issue of whether gross sales of liquor (as opposed to only commissions) are to be included in calculating percentage rent due under the contract. Additionally, the counterclaim has been dismissed in the current appeal. *Page 1