DECISION AND JUDGMENT ENTRY
{¶ 1} This appeal is from the March 23, 2005 judgment of the Ottawa County Court of Common Pleas, which granted summary judgment in favor of appellee, Orchard Isle Mobile Home Park I Condominium Association, Inc. ("Condominium Association"). Finding that summary judgment was not proper, we reverse the decision of the lower court. Appellant, Sandy Shores, asserts the following assignments of error on appeal:
 {¶ 2} "The Trial Court erred in granting summary judgment to plaintiff-appellee, Orchard Isle Mobile Home Park I Condominium Association, Inc. ("appellee" or "lessor"), ruling that the lease between it and defendant-appellant, Sandy Shores ("appellant" or "lessee") is not a perpetual lease and was therefore terminable by either party instead of being terminable solely at the option of appellant as lessee."
 {¶ 3} This action began with the Condominium Association seeking declaratory judgment and preliminary and permanent injunctions against Sandy Shores regarding the termination of a lease between the parties. Both parties sought summary judgment. The parties agreed that the sole issue before the court was whether the lease was valid and whether it was an enforceable perpetual lease. The trial court granted summary judgment to the Condominium Association and terminated the lease after consideration of the following evidence presented to the court.
 {¶ 4} The Orchard Isle Mobile Home Park I Condominium located on Catawba Island and its owners association were created in 1983 by Sandy Shores, an Ohio general partnership, and Orchard Isle Mobile Home Estates, Inc. At that time, Orchard Isle Mobile Homes Estates, Inc. owned an existing mobile home park and Sandy Shores owned an adjoining parcel of land that was designated for future development and a "reserve area" upon which a building existed for use in water treatment and street lighting. All of the property was incorporated into the condominium property. Orchard Isle Mobile Home Sales, Inc. was created by three of the four individuals who were partners in Sandy Shores and also the sole shareholders of Ohio Isle Mobile Home Estates, Inc. Orchard Isle Mobile Home Sales, Inc. leased the reserve area and utilized the building in the reserve area to sell and service mobile homes for the Orchard Isle Mobile Home Park I Condominium.
 {¶ 5} The Condominium Declaration executed on November 23, 1983 provided that:
 {¶ 6} "The Declarant reserves the right to lease or sublet from the Association on a year to year [sic] basis at Declarant's option the area denominated Reserve Area A on the drawings upon payment to the Association of an annual rental equal to a Unit assessment."
 {¶ 7} Approximately one month after the Condominium Declaration was executed, the Condominium Association entered into a lease of the reserve area by Orchard Isle Mobile Home Estates, Inc. Approximately seven years later, on May 19, 1990, the Condominium Association entered into a new lease of the reserve area by Orchard Isle Mobile Home Sales, Inc. This lease was executed after two years of negotiations between the parties and doubled the annual rent payment. Approximately two years later, this lease was assigned by Ohio Isle Mobile Home Sales, Inc. to Sandy Shores.
 {¶ 8} Paragraph 2 of the lease provided that the lessee could renew the lease each year "solely at the option of the Lessee under the same terms and conditions set forth herein." Paragraph 10 of the lease provided that upon payment of the rent and performance of the covenants in the lease, the Lessee could hold the premises for the term or terms specified in the lease.
 {¶ 9} Sandy Shores, as lessee, renewed the lease annually until 1996, when the Condominium Association sought to increase the annual rent amount. The parties amended the lease on January 30, 1999 to provide that Sandy Shores would assume the additional obligation of maintenance of the building in the reserve area, snow removal in the reserve area, and payment of utility costs related to the reserved area.
 {¶ 10} On June 5, 2002, the Condominium Association amended the Condominium Declaration to eliminate the original Declaration Article IV, Section 4 and substitute the following as a new Article IV, Section 4:
 {¶ 11} "The Board may, for and in the name of the Association, lease the area denominated Reserve Area A on the drawings to an Person upon such term and conditions, including rent, as reasonably determined by the Board; provided that, at a minimum, the lessee of Reserve Area A shall be required to maintain the building and grounds comparable to park standards and shall be responsible for any and all damage caused to any part of the Condominium Property, including Reserve Area A. Reserve Area A shall be used in any lawful manner, provided, however, that the Board shall not permit any use of Reserve Area A that unreasonably interferes with the quiet use and enjoyment of any Unit Owner's Unit."
 {¶ 12} In March 2003, the Condominium Association sought to terminate the lease on April 30, 2003, by giving notice to Sandy Shores that the Condominium Association would not renew the lease. Sandy Shores refused to vacate the premises contending that the lease was renewable solely at the option of Sandy Shores.
 {¶ 13} Therefore, the Condominium Association brought this action arguing that because of the amended Declaration, the association no longer had an obligation to lease the reserve area to Sandy Shores. The Condominium Association contends that the 1990 lease, as amended in 1999, did not create a perpetual lease. The trial court agreed and granted summary judgment to the Condominium Association.
 {¶ 14} Summary judgment is reviewed de novo. AdvancedAnalytics Labs., Inc. v. Kegler, Brown, Hill Ritter,148 Ohio App.3d 440, 2002-Ohio-3328, at ¶ 33. Therefore, applying the requirements of Civ.R. 56(C), summary judgment is appropriate only when it is clear "* * * (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor." Harless v. Willis Day Warehousing Co. (1978),54 Ohio St.2d 64, 66. The interpretation of a contract is a question of law when the terms of the contract are clear and unambiguous.State ex rel. Parsons v. Fleming, 68 Ohio St.3d 509, 511, 1994-Ohio-172.
 {¶ 15} While perpetual leases are valid under Ohio law, they are not favored. Hallock v. Kintzler (1943), 142 Ohio St. 287, paragraph one of the syllabus. However, language of the lease contract controls whether a lease is perpetual. Myers v. EastOhio Gas Co. (1977), 51 Ohio St.2d 121, at 126-127, andHallock, supra. Unless the language of the contract is clear and unambiguous, a rebutable presumption arises under common law that the parties did not intend to make the lease perpetually renewable. In the Hallock case, the court concluded that the contract language did not clearly reflect an intent to create a perpetual lease. The lease in that case stated that: "* * * the lease may be renewed from year to year * * * at the option of the lessee, * * *."
 {¶ 16} Lease language which has been determined to clearly and unambiguously reflect the intent to create perpetual renewal language include: "* * * for three years * * * and thereafter on a year to year basis until terminated by the lessees by one month's notice * * *" (President and Trustees of the OhioUniversity v. Athens Livestock Sales (1961), 115 Ohio App. 21,23-24); "* * * least to continue so long as rental payments are made" (Grezlik v. Lisbon Coal Co. (1951), 65 Ohio L.Abs. 601); "* * * renewal shall be automatic" unless the party gives written notice (Verhovsek v. Mutual Properties (Mar. 5, 1987), Cuyahoga App. No. 51600; and "* * * renewal shall be deemed to have been xercised for an additional period of one year by continuing in possession of said premises and payment of rental within sixty (60) days after due date" (Hoffman v. Foster and Kleiser (May 27, 1982), Cuyahoga App. No. 44134).
 {¶ 17} The trial court relied upon the holding in Hallock v.Kintzler, supra at paragraph three of the syllabus, to find that the lease in this case does not clearly show an intention by the parties to make the lease perpetually renewable. We disagree. Upon examination of the language of the lease, we find that the use of the word "solely" clearly indicates the intent of the parties to make the lease perpetually renewable at the lessee's option. Appellant's sole assignment of error is well-taken.
 {¶ 18} Having found that the trial court did commit error prejudicial to appellant and that substantial justice has not been done, the judgment of the Ottawa County Court of Common Pleas is reversed. Appellee is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Ottawa County.
JUDGMENT REVERSED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, J., Singer, P.J., Parish, J, concur.