[Cite as *Krantz v. Pahnke*, 2022-Ohio-15.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | | |
|---|---|---|---|
| ERIC KRANTZ, TTEE, KRANTZ INCOME ACCESS TRUST | : | | JUDGES: |
| | : | | Hon. Craig R. Baldwin, P.J. |
| | : | | Hon. Patricia A. Delaney, J. |
| Plaintiff - Appellee | : | | Hon. Earle E. Wise, J. |
| | : | | |
| -vs- | : | | |
| | : | | |
| JOHNATHAN PAHNKE, et al., | : | | Case No. 2021 CA 0043 |
| | : | | |
| Defendant - Appellant | : | | O P I N I O N |

CHARACTER OF PROCEEDING:        Appeal from the Mansfield Municipal Court, Case No. 2021 CVG 769

JUDGMENT:        Affirmed

DATE OF JUDGMENT:        January 5, 2022

APPEARANCES:

For Plaintiff-Appellee

DAVID N. HARING
Brown, Bemiller, Murray,
& Haring, LLC
99 Park Avenue West Suite B
Mansfield, Ohio 44902

For Defendant-Appellant

JOHNATHAN PAHNKE, *Pro Se*
P.O. Box 262
Ontario, Ohio 44862

*Baldwin, P.J.*

{¶1}   Appellant, Jonathan Pahnke, appeals from the judgment of the Mansfield Municipal Court ordering that appellee, Eric Krantz Trustee, Krantz Income Access Trust, was entitled to restitution of the premises after a trial on the first count of a complaint for forcible entry and detainer.

## STATEMENT OF THE FACTS AND THE CASE

{¶2}   Appellee, Eric Krantz, Trustee, Krantz Income Access Trust (Krantz) filed a complaint seeking eviction of appellant, Jonathan Pahnke on April 13, 2021. Krantz alleged that it and Pahnke were parties to a written lease agreement involving the subject premises and that it had served Pahnke with a thirty-day notice terminating the tenancy on February 24, 2021. Krantz alleged that Pahnke did not leave the premises and that he served Pahnke with a three-day notice as required by R.C. 1923.04(A) on April 5, 2021. Krantz requested restitution of the premises and sought judgment for an outstanding sum due of $3800.00.  Pahnke was served with a copy of the complaint on April 14, 2021 and the matter was scheduled for a hearing on the first count for restitution of the premises, on April 22, 2021. The docket does not show any request for a continuance.

{¶3}   The parties appeared at the hearing, Krantz with counsel and Pahnke pro se.

{¶4}   Krantz confirmed that he was the duly authorized representative of the Krantz Income Access Trust, that the Trust was owner of the property at 225 Wimbledon Drive, Mansfield, Ohio and that the property was subject to a written lease agreement with Pahnke.  He testified that the lease term was one year and that it terminated on April 1, 2021.  Krantz delivered a thirty-day notice terminating the lease on February 24,

2021, but Pahnke did not vacate the premises.  He then claimed to have served Pahnke with a three-day notice to vacate, but Pahnke remained in the home.

**{¶5}**   Krantz confirmed that he was seeking restitution of the premises.

**{¶6}**   Pahnke testified on his own behalf and began by submitting a written answer to the complaint. We note that the answer is in narrative form and strays significantly from Civ.R. 8(B)'s requirement that "A party shall state in short and plain terms the party's defenses to each claim asserted and shall admit or deny the averments upon which the adverse party relies."

**{¶7}**   After submitting his written answer, he continued his testimony by first arguing that he did not have a lease with Krantz, but that he signed a lease with Eagle Management Group, pointing to the caption of the lease agreement.  He conceded that the property was quitclaimed to Krantz, but contended that the lease was executed prior to that transfer.  He argued those facts precluded the existence of a lease between himself and Krantz.

**{¶8}**   He also contended that the pet agreement lease addendum was signed by Carl Krantz as landlord, presumably in support of his argument that the lease was not between him and the Trust.

**{¶9}**   He argued that Krantz's effort to evict him was in retaliation to his requesting that repairs be made to the property, referring to the timing of his request for repairs and the notice of termination that was delivered shortly after Krantz purportedly received the request.

**{¶10}** Counsel for Krantz responded that the lease was assigned to the Trust and, even if there was no written lease, the term would become month-to-month and that lease would be subject to termination.

**{¶11}** Pahnke agreed that it was a month-to-month lease, but claimed he was asserting the defense of retaliatory eviction and that he was entitled to dismissal of the action.  He also contended that he entered into an agreement with Krantz to pay a higher rent and that Krantz would make repairs, but Krantz denied he made any request to pay additional rent, and described that payment to an escrow account as an attempt to avoid termination of the lease.

**{¶12}** Pahnke also claimed that he did not receive the three-day notice and that his daughter would testify to that fact.  Despite his representation, the record contains no testimony from his daughter nor any request to present his daughter's testimony.

**{¶13}** Pahnke stated that he was prepared to go to trial on the issue of retaliatory eviction and then the judge intervened:

THE COURT: Here is the situation, the Court is going to tell you that the Court is leaning this way. You do not have the right to stay in this property indefinitely. This is an ongoing thing. Why you are not out of this property yet, I don't know.

MR. PANKE: I would like to explain that.

THE COURT: And a year ago we dealt with this.

MR. PANKE: Yes, and you found him at fault and you found he hadn't done the repairs he is obligated to do under law or else then you would have terminated the lease for the termination.

THE COURT: And at that point in time, you through counsel you said you were looking to get out of this.

MR. PANKE: I was and I have been looking for a year. I've looked at hundreds of properties. Because of Covid, rents have doubled in many places and it is very difficult to find even an open vacancy, Your Honor.

(Trial Transcript, p. 16, line 11 to p. 17, line 1).

{¶14} The parties then began bickering over payments. Pahnke accused Carl Krantz of lying and the court interjected:

THE COURT: Well, we are not talking about money. We are not talking about the escrow. It is not before the Court here today and the Court has a stacked docket today. And this hearing is already impending upon the rest of the cases that are set before the Court at this point in time.

MR. PANKE: I actually was looking for counsel, Your Honor. I'd be glad for a continuance to give me another week to get counsel.

THE COURT: Mr. Pahnke, you have had more than enough notice for counsel.

MR. PANKE: All right.

THE COURT: You have been through this before. You are not naive to this process, as to what would take place.

MR. PANKE: Your Honor, I have an affirmative defense. All I'm asking is the Court look at the documents I presented before you.

(Trial Transcript, p. 18, line 3 to 17).

**{¶15}** The trial court accepted a USB drive from Pahnke presumably containing the documents he referenced at trial, offered Krantz the opportunity to respond to the documents on that USB drive if he decided it was necessary and took the matter under advisement.

**{¶16}** Krantz filed a Reply to Defendant's Counterclaim of Retaliatory Eviction on April 27, 2021 and Pahnke filed an Amendment to Answer and Response to Plaintiff's Reply Brief on May 12, 2021.

**{¶17}** The trial court issued its order finding in favor of Krantz on May 21, 2021 and, on May 28, 2021, Pahnke filed a request for a stay of execution and a notice of appeal. The stay was granted. Pahnke submitted seven assignments of error:

**{¶18}** "I. THE TRIAL COURT ERRED IN MAKING VARIOUS STATEMENTS THAT INDICATED A "FIXED ANTICIPATORY JUDGMENT" REGARDING APPELLANT'S CASE AND FLATLY REFUSING TO ALLOW A CONTINUANCE DUE TO ITS "STACKED DOCKET" THAT PRECLUDED APPELLANT FROM BEING ABLE TO FULLY TESTIFY, INTRODUCE EVIDENCE AND CROSS EXAMINE PLAINTIFF'S WITNESS CARL KRANTZ ON THE KEY MATTER OF WHETHER HE PROPERLY SERVED UPON APPELLANTS THE REQUIRED "3 DAY NOTICE" PURSUANT TO RC 1923."

**{¶19}** "II. THE COURT BELOW ERRED IN HOLDING THAT DEFENDANT WAS OCCUPYING THE PREMISES ON A "WRITTEN MONTH TO MONTH TENANCY" IN SPITE OF THAT CLEARLY NOT BEING THE CASE ON THE FACE OF THE APRIL 8, 2017 LEASE-RENTAL AGREEMENT ATTACHED TO PLAINTIFF'S COMPLAINT."

**{¶20}** "III. THE TRIAL COURT ERRED IN FINDING THAT THE NOTICE TO TERMINATE UNDER RC 5321.17 WAS PROPERLY GIVEN IN THIS CASE, AS THE TERMS OF THE PREVIOUSLY-EXECUTED LEASE AGREEMENT BETWEEN THE PARTIES ITSELF PRECLUDES PLAINTIFF FROM GIVING NOTICE AND THUS PREVAILING ON HIS COMPLAINT IN FORCIBLE ENTRY AND DETAINER."

**{¶21}** "IV. THE COURT BELOW ERRED IN RULING THAT DEFENDANT-APPELLANTS WERE "HOLDING OVER THEIR TERM" PURSUANT TO RC 5321.03 (A)(4) AND THEREFORE PRECLUDED FROM ASSERTING THEIR "RETALIATORY EVICTION" DEFENSE IN OPPOSITION TO THE EVICTION ACTION UNDER RC 532 L .02(A)C2)."

**{¶22}** "V. THE RULING OF THE COURT BELOW, ERRED IN THAT IT OVERLOOKED THE EQUITABLE PRINCIPLES AT STAKE IN THIS CASE AND THE FACT THAT THE COURT'S RULING BELOW, IF CORRECT AND BROADLY APPLIED, CREATES A PERVERSE INCENTIVE THAT IS ANATHEMA TO THE RENTING PUBLIC AT LARGE AND CONTRARY TO THE "PUBLIC INTEREST" CONCERNS THAT LIE AT THE HEART OF DELFINO V. PAUL DAVIES CHEVROLET, ET AL."

**{¶23}** "VI. THE MAY 18, 2021 ORDER ERRONEOUSLY RULED THAT "DEFENDANT HAS BEEN DULY SERVED WITH THE REQUIRED NOTICE TO LEAVE THE PREMISES PURSUANT TO R.C. 1923.04."

**{¶24}** "VII. THE COURT IN THIS CASE, BY ITS MAY 18 ORDER HOLDING THAT DEFENDANT/ APPELLANT'S RIGHT TO ASSERT THE DEFENSE OF "RETALIATORY EVICTION" AGAINST A FORCIBLE ENTRY AND DETAINER ACTION P (sic) PURSUANT TO RC 321.02 (A), (sic) SUBSECTIONS (1)(2) AND (3) WAS

SUPERSEDED BY THE "EXCEPTION" FOUND IN RC 5321.03 (A)(4) BARRING SAID DEFENSE WHEN A TENANT "HOLDS OVER THEIR RENTAL TERM," COMMITTED PREJUDICIAL ERROR BY OVERLOOKING ITS HARM TO THE FUNDAMENTAL PRINCIPLE OF "IN PARI MATERIA."

## APPELLATE RULES

**{¶25}** Before we address the merits of the appeal, we must consider Pahnke's failure to comply with the requirements of the Appellate Rules as well as his apparent disregard for our order denying his request to expand the number of pages in his reply brief. His status as a pro se litigant provides no excuse as the Supreme Court of Ohio has "repeatedly declared that "pro se litigants * * * must follow the same procedures as litigants represented by counsel." * * * 'It is well established that pro se litigants are presumed to have knowledge of the law and legal procedures and that they are held to the same standard as litigants who are represented by counsel.' " (Citations omitted.) *State ex rel. Neil v. French*, 153 Ohio St.3d 271, 2018-Ohio-2692, 104 N.E.3d 764. Further, the text of Pahnke's pleadings discloses he has access and has considered the rules, but either cannot or will not comply with the requirements.

**{¶26}** Appellate Rule 19 (A) requires double spacing between each line of text and limits the length of appellant's brief to thirty pages, "exclusive of the cover page, table of contents, table of cases, statutes and other authorities cited, statement regarding oral argument, certificates of counsel, signature blocks, certificate of service, and appendices, if any." Local Rule 9(C) and (D) permit footnotes to be single spaced, but requires that they be in 12-point type, either Times New Roman or Arial.

**{¶27}** Pahnke uses 12-point type, but a portion of his brief that is not exempt from the page limit is single spaced and all footnotes are in ten-point type.  Further, the footnotes are exceptionally lengthy and often address matters only peripherally related to the text linked to the footnote.  Pahnke uses digits on the final thirty pages of his brief, and uses roman numerals on the first twelve pages suggesting that he is aware of the page limit and believes that use of a different numbering system serves as compliance with the Rule. By our calculation, Pahnke's brief contains over 15,000 words, well in excess of the limit described in the rule and substantially more than thirty pages.

**{¶28}** And the text of the brief lacks the required reference to the record. Appellate Rule 16 requires reference to the record in support of the statement of facts, argument and assignment of error.  Pahnke's brief contains many assertions of fact that are not supported by any reference to the trial transcript or any other part of the record.  Likewise, his argument contains material assertions of fact but minimal reference to the record where those facts may be found.

**{¶29}** Pahnke's disregard for the Rules limiting the size of briefs is particularly concerning because it is evident he is aware of the restriction.  Prior to filing his reply brief in this matter he requested leave to file a reply brief exceeding the fifteen page limit. (App. R. 19(A)).  This request is sanctioned by App.R. 19(A) and demonstrates Pahnke's ability to access and understand the rules.  Even more disturbing than his disregard for the Rules is Pahnke's failure to comply with our order denying his request to increase the page limit of this reply brief.  Despite not receiving leave to do so, Pahnke filed a twenty-three page reply brief complete with non-compliant ten-point type footnotes.

**{¶30}** Pahnke's disregard for the Rules and our order is tantamount to failure to file a brief, and pursuant to App.R. 18(C), this Court could dismiss the instant appeal for want of prosecution. *State v. Patterson*, 5th Dist. Ashland No. 02-COA-041, 2003-Ohio-4673, ¶ 5. We will instead consider the merits of this matter, but the disregard for our order and the Rules must carry come consequences. Pahnke's initial brief exceeded the page restriction without our leave. We will not haphazardly strike pages but instead we will not consider the sections captioned "Statement of Issues" and "Statement of Facts and the Case" as they are single spaced and fail to contain complete references to the record in violation of the Appellant Rules.

**{¶31}** With regard to the reply brief, we will consider only the first fifteen pages as Pahnke was denied leave to modify that limitation, but filed a twenty-three-page brief in violation of our order.

## I.

**{¶32}** In his first assignment of error, Pahnke claims that "[t]he trial court erred in making various statements that indicated a "fixed anticipatory judgment" regarding Appellant's case and flatly refusing to allow a continuance due to its "stacked docket" that precluded Appellant from being able to fully testify, introduce evidence and cross examine Plaintiff's witness Carl Krantz on the key matter of whether he properly served upon Appellants the required '3 day notice' pursuant to RC 1923." We have reviewed the trial transcript and find that Pahnke's interpretation of the statements made by the trial court falls short of demonstrating a "fixed anticipatory judgment" or supporting the other complaints he lists in this assignment of error.

**{¶33}** "A judge is presumed not to be biased or prejudiced, and a party alleging bias or prejudice must present evidence to overcome the presumption." *Wardeh v. Altabchi*, 10th Dist. No. 03AP–1177, 2004–Ohio–4423, ¶ 20. "The appearance of bias or prejudice must be compelling to overcome this presumption of integrity." *Trott v. Trott,* 10th Dist. No. 01AP–852, 2002 WL 392286 (Mar. 14, 2002), quoting *In re Disqualification of Olivito,* 74 Ohio St.3d 1261, 1263 (1994). "The existence of prejudice or bias against a party is a matter that is particularly within the knowledge and reflection of each individual judge and is difficult to question unless the judge specifically verbalizes personal bias or prejudice toward a party." *Eller v. Wendy's Internatl., Inc.,* 142 Ohio App.3d 321, 340 (10th Dist.2000), quoting *Okocha v. Fehrenbacher,* 101 Ohio App.3d 309, 322 (8th Dist.1995). "[D]issatisfaction or disagreement with a judge's rulings of law are legal issues subject to appeal. A judge's opinions of law, even if later found to be erroneous, are not by themselves evidence of bias or prejudice and thus are not grounds for disqualification." *In re Disqualification of Corts*, 47 Ohio St.3d 601, 602, 546 N.E.2d 928 (1988).

**{¶34}** Pahnke complains that the trial court denied his request for a continuance, denied him the opportunity to cross-examine Carl Krantz and denied him the opportunity to present his case all allegedly due to judicial bias. The transcript does reflect a discussion of a continuance, but nothing in the record supports a conclusion that Pahnke was prevented from presenting evidence in support of his case. Pahnke also points to the court's comment that "Here is the situation, the Court is going to tell you that the Court is leaning this way. You do not have the right to stay in this property indefinitely. This is an ongoing thing. Why you are not out of this property yet, I don't know." (Transcript, p. 16, lines 5-10). Pahnke refers to these comments as supporting his allegation that the

judge had reached a conclusion regarding this matter, but he overlooks the context in which it was made and attributes intent that is not expressed.

**{¶35}** Pahnke quoted this passage in his brief and added the word "plaintiffs" so the quote is modified to: "Here is the situation, the Court is going to tell you that the Court is leaning this [plaintiffs] way." While we appreciate that the brackets disclose that Pahnke is editorializing, he provides no objective evidence to support his conclusion that the trial court is favoring Krantz.

**{¶36}** The trial court did respond to Pahnke's comment regarding a continuance after the parties began arguing about payments and money.  After Pahnke accused Krantz of lying, appellee attempted to respond and the trial court ordered them to stop. Appellee concluded his statement by stating that "[i]f you want to argue -- if he wants to argue about money, let's set it for a hearing date and let's argue about money." (Transcript, p. 17, line 25 to p. 18, line 2).  In response to appellee's statement, the trial court stated that the issues of money and escrow were not on the docket, that the docket was crowded and that the case was "impending upon the rest of the cases that are set before the Court at this point in time. "(Transcript, p. 18, lines 7-8). It was at this point in the trial that Pahnke first mentioned a continuance to "give me another week to get counsel." (Transcript, p. 18, lines 11). The trial court responded that he had more than enough notice for counsel, noting that he had been through this before.  In fact, the trial court expressed some frustration with Pahnke as he had been before the court in this matter one year prior and "* * * at that point in time you through counsel you said you were looking to get out of this" referring to Pahnke's intent to leave the property. (Transcript, p. 13, lines 13-21).

**{¶37}** "The grant or denial of a continuance is a matter which is entrusted to the broad, sound discretion of the trial judge. An appellate court must not reverse the denial of a continuance unless there has been an abuse of discretion." *State v. Unger*, 67 Ohio St.2d 65, 67, 423 N.E.2d 1078, 1080 (1981). The transcript reflects that Pahnke had appeared before the court previously, and his brief makes it clear that prior appearance involved an attempt at eviction by Krantz. Pahnke claims that he was prejudiced by the denial because it prevented him from presenting his defense, but the record does not support his complaint. Considering the circumstances of the request, we cannot find that the trial court's denial of the request was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

**{¶38}** The trial court did not limit Pahnke's opportunity to present his defense. Pahnke did not request an opportunity to cross examine Carl Krantz, present the testimony of his daughter or offer additional evidence that was not accepted. Pahnke claimed to be prepared to proceed: "But I'm totally fine if -- if we want to go to trial on the issue of retaliatory eviction because that again, is a total defense. It is not something scurrilous I'm doing." (Transcript, p. 16, lines 1-4). And he did state that "Your Honor, I have an affirmative defense. All I'm asking is the Court look at the documents I presented before you." (Transcript, p. 18, lines 18-20). And, before the conclusion to the hearing, Pahnke offered " * * * my only last point, Your Honor, to take with you" and stated "That's all. Finished, Your Honor." (Transcript, p. 23, lines 23-24; p. 24, line 8).

**{¶39}** We find no compelling evidence that the trial court was biased, that the trial court abused its discretion in denying the request for continuance or that the trial court acted in any way to interfere with Pahnke's opportunity to present his defense.

**{¶40}** The first assignment of error is denied.

**II.**

**{¶41}** Pahnke claims the trial court erred "in holding that he was occupying the premises on a written "month to month tenancy" in spite of that clearly not being the case on the face of the April 8, 2017 Lease-Rental Agreement attached to Plaintiff's complaint." Pahnke does not claim that this error by itself created any prejudicial impact, but relies on his interpretation of the lease to support other assignments of error.

**{¶42}** When construing and interpreting lease provisions, courts have applied traditional contract principles and have enforced a lease as written if its language is clear and unambiguous. *Myers v. E. Ohio Gas Co.*, 51 Ohio St.2d 121, 125, 5 0, 364 N.E.2d 1369.0.3d 103, 51 Ohio St.2d 121, 364 N.E.2d 1369 (1977). It is a fundamental principle in contract construction that contracts should "be interpreted so as to carry out the intent of the parties, as that intent is evidenced by the contractual language." *Skivolocki v. East Ohio Gas Company*, 38 Ohio St.2d 244, 313 N.E.2d 374 (1974), paragraph one of the syllabus. A reviewing court should give the contract's language its plain and ordinary meaning unless some other meaning is evidenced within the document. *Alexander v. Buckeye Pipe Line Company*, 53 Ohio St.2d 241, 374 N.E.2d 146 (1978). If the terms of the contract are determined to be clear and unambiguous, the interpretation of the language is a question of law reviewed de novo on appeal. *State ex rel. Parsons v. Fleming*, 68 Ohio St.3d 509, 628 N.E.2d 1377 (1994). Under a de novo review, an appellate court may interpret the language of the contract substituting its interpretation for that of the trial court. *Children's Medical Center v. Ward*, 87 Ohio App.3d 504, 622 N.E.2d 692 (2nd Dist.1993).

**{¶43}** Pahnke contends that the subject lease is a perpetually renewing lease that "runs afoul" of the statute of limitations because it was not notarized. Perpetually renewing leases

> are not favored and * * * general covenants as to right of renewal are therefore usually limited to a single renewal unless an intention to create a perpetuity is clearly shown. * * * This rule is based on the principle that the courts do not favor perpetuities, and unless the lease expressly or by clear implication provides that the second lease shall contain a covenant for future or perpetual renewals, it will be construed as providing for only a single renewal."

*Hallock* v. Kintzler, 142 Ohio St. 287, 289, 51 N.E.2d 905 (1943).

**{¶44}** "Unless the language of the contract is clear and unambiguous, a rebutable (sic) presumption arises under common law that the parties did not intend to make the lease perpetually renewable." *Orchard Isle Mobile Home Park I Condominium Assn. Inc. v. Sandy Shores*, 6th Dist. Ottawa No. OT-05-018, 2006-Ohio-326, ¶¶ 15-16.

**{¶45}** The relevant language in the lease states that "TERM: The term hereof shall commence on 4-1-17, and continue for a period of 12 months thereafter, renewing for 12 months, unless written thirty (30) day notice is given." (Exhibit B, p. 1) While we agree that the lease is not a month-to-month lease, this language contains no support for a conclusion that the lease was intended to be a perpetually renewing lease.

Lease language which has been determined to clearly and unambiguously reflect the intent to create perpetual renewal language include:

> * * * for three years * * * and thereafter on a year to year basis until terminated by the lessees by one month's notice * * * " (*President and*

*Trustees of the Ohio University v. Athens Livestock Sales* (1961), 115 Ohio App. 21, 23–24, 179 N.E.2d 382); " * * * least to continue so long as rental payments are made" (*Grezlik v. Lisbon Coal Co.*(1951), 115 N.E.2d 188, 65 Ohio L.Abs. 601); " * * * renewal shall be automatic" unless the party gives written notice (*Verhovsek v. Mutual Properties* (Mar. 5, 1987), Cuyahoga App. No. 51600; and " * * * renewal shall be deemed to have been exercised for an additional period of one year by continuing in possession of said premises and payment of rental within sixty (60) days after due date (*Hoffman v. Foster and Kleiser* (May 27, 1982), Cuyahoga App. No. 44134).

*Orchard, supra, at* ¶ 16.

**{¶46}** The lease before us does not contain any similar language.

**{¶47}** The trial court erred when it described the lease as month-to-month, but the correction of the error is without consequence and does not warrant any modification of the trial court's order that the appellee was entitled to restitution of the premises. We do not agree with Pahnke's characterization of the lease, and, instead, we hold that the lease was for a term of twelve months, renewable for a second period of twelve months and no more.

**III.**

**{¶48}** In this third assignment of error, Pahnke contends that the trial court "erred in finding that the Notice to Terminate under RC 5321.17 was properly given in this case, as the terms of the previously-executed Lease Agreement between the parties itself precludes Plaintiff from giving notice and thus prevailing on his Complaint in Forcible Entry and Detainer." Pahnke relies upon his conclusion that the lease is a perpetual lease

and that the language of the lease defining its term is ambiguous.  He uses these conclusions to support his assertion that only he may terminate the lease. We disagree with his premises and his final assertion.  We concluded in our analysis of the second assignment of error that the lease is not perpetual, so we will address Pahnke's assertion that the lease is ambiguous.

**{¶49}** The relevant language in the lease states: Term: The term hereof shall commence on 4-1-17 and continue for a period of 12 months thereafter, unless written thirty (30) day notice is given." (Exhibit B, Complaint).  Pahnke claims that "* * *it is not entirely clear who must give the "notice" referred to under the "TERM" heading on page one of the Lease Agreement * * *" and then proceeds to use another provision of the lease to construe this allegedly ambiguous section.

**{¶50}** The ambiguity of a contract is a question of law. *Michael A. Gerard, Inc. v. Haffke,* 8th Dist. Cuyahoga No. 98488, 2013-Ohio-168, 2013 WL 267296, ¶ 11, citing *Progress Properties, Inc. v. Baird & Patterson*, 8th Dist. Cuyahoga Nos. 70286 and 70287, 1997 WL 661898 (Oct. 23, 1997). "A contract *415 is ambiguous when it is susceptible to more than one reasonable interpretation." *Id.*, citing *Hillsboro v. Fraternal Order of Police, Ohio Labor Council, Inc.,* 52 Ohio St.3d 174, 177, 556 N.E.2d 1186 (1990). *Westgate Ford Truck Sales v. Ford Motor Co.*, 8th Dist. No. 101073, 2014-Ohio-5429, 25 N.E.3d 410, ¶ 14.

**{¶51}** The only reasonable interpretation of the TERM portion of the contract is that the lack of a limitation upon who must provide notice of non-renewal of the lease allows either party, both of whom have an interest in the premises and the extension or non-renewal of the lease, to provide notice of non-renewal. We find that the language

describing the term of the lease and the requirement of notice to non-renew has a "plain and ordinary meaning" in the context of a residential lease, and that plain meaning does not lead to an absurd result. *Travelers Indem. Co. v. Reddick,* 37 Ohio St.2d 119, 121, 308 N.E.2d 454, 456 (1974), holding modified by *Girgis v. State Farm Mut. Auto. Ins. Co.*, 75 Ohio St.3d 302, 662 N.E.2d 280 (1996).

**{¶52}** Because we find that the language controlling the term of the lease is not susceptible of more than one reasonable interpretation, we conclude that it is not ambiguous and further interpretation of the language is unnecessary.

**{¶53}** Pahnke's third assignment of error is overruled.

## IV.

**{¶54}** Pahnke argues that the lease in question was either perpetual or month-to-month and that, therefore, the court below erred in ruling that Defendant-Appellants were "holding over their term" pursuant to RC 5321.03(A)(4) and therefore precluded from asserting their "retaliatory eviction" defense in opposition to the eviction action under RC 532 l .02(A)(2). We have previously determined that the lease was not a perpetual lease, nor a month-to-month lease, but a lease for a term of twelve months, renewable for an additional twelve months, so we will focus upon Pahnke's contention that he was a month-to-month tenant.

**{¶55}** Pahnke contends that he "did not take possession pursuant to a "month to month lease," as noted elsewhere herein-but rather pursuant to what he believed at the time was a valid, perpetual, annual lease." (Appellant's Brief, p. 10). He does not argue that he was a tenant subject to a month-to-month lease, but relies upon the trial court's finding that he "occupied the premises on a written month to month tenancy." (Judgment

Entry, Feb. 18, 2021).  Pahnke claimed that the trial court erred in that finding and we agreed in our analysis of his second assignment of error.  However, we found that the lease was for a term of twelve months, renewable for an additional twelve months and that there was insufficient evidence to support a finding that the lease was perpetual.

**{¶56}** Because the lease is not perpetual, nor month-to-month, but for a fixed term, and because the trial court found that Pahnke received the requisite notices of termination of the tenancy and to vacate, the trial court correctly found that Pahnke was holding over his term.  Because he was holding over his term, he may not rely upon an allegation of retaliatory action as a defense to the appellee's action to recover possession of the premises.  (R.C. 5321.02; 5321.03).

**{¶57}** Pahnke's fourth assignment of error is overruled.

**V.**

**{¶58}** Pahnke's fifth assignment of error, that the trial court  "erred in that it overlooked the equitable principles at stake in this case and the fact that the court's ruling below, if correct and broadly applied, creates a perverse incentive that is anathema to the renting public at large and contrary to the "public interest" concerns that lie at the heart of *Delfino v. Paul Davies Chevrolet, et al*" relies upon our agreement with Pahnke's characterization of the lease in this case. Pahnke describes the subject lease as "invalid" and "* * *the current month-to-month "status" of the now-partially-invalidated (sic) April 8, 2017 perpetual Lease-Rental Agreement between the parties-due to said Lease's "perpetual" term being nullified by its being defectively-executed under Section 5301.08 * * *. (Appellant's Brief, p. 21).  We have concluded that the lease was not perpetual nor month-to-month or invalid as further explained in our analysis of Pahnke's second

assignment of error.  Because Pahnke's argument has at its foundation these erroneous premises, the entire argument is moot and unpersuasive.

**{¶59}**  Pahnke's fifth assignment of error is denied.

**VI.**

**{¶60}**  For his sixth assignment of error, Pahnke claims "the May 18, 2021 Order erroneously ruled that "Defendant has been duly served with the required notice to leave the premises pursuant to R.C. 1923.04." Pahnke contends that the evidence supporting the service of the notice was tainted and that the notice was not signed by the party desiring to commence the action.

**{¶61}**  We interpret the first part of Pahnke's assignment of error as contending that the trial court's finding that he was "served with the required notice to leave the premises pursuant to R.C. 1923.04" was not supported by the manifest weight of the evidence and was the result of a fatally flawed trial "rife with questions regarding judicial bias."  We have addressed the issue of judicial bias in our analysis of appellant's first assignment of error, finding insufficient evidence of any bias or anticipatory judgment.  As to the manifest weight of the evidence, as an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact-finder could base its judgment. *Cross Truck v. Jeffries*, 5th Dist. Stark No. CA-5758, 1982 WL 2911 (February 10, 1982). Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Construction*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978).

**{¶62}** On review for manifest weight, the standard in a civil case is identical to the standard in a criminal case: A reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury [or finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction [decision] must be reversed and a new trial ordered." *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). *See also, State v. Thompkins,* 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541; *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517. In weighing the evidence, however, we are always mindful of the presumption in favor of the trial court's factual findings. *Eastley* at ¶ 2.

**{¶63}** The evidence in the record regarding service of the notice is limited to the testimony of Carl Krantz that the notice was served and the response of Pahnke that he did not receive the notice. The trial court weighed the evidence and the credibility of the witnesses and determined that the evidence supporting a finding that the notice was served was more credible. After review of the record, we find relevant, competent and credible evidence in support of the trial court's finding and we cannot find that that the trial court lost its way and created such a manifest miscarriage of justice that the decision must be reversed and a new trial ordered.

**{¶64}** As to Pahnke's assertion that the notice was not signed by the appropriate party, we find that this matter was not addressed to the trial court. Pahnke admits as much in his brief when he states "* * * in researching the law preparing his brief for this Honorable Court Appellant has come across other apropos precedent of this Court which may make unnecessary further examination of this issue" tacitly admitting this is a new

argument.    (Appellant's Brief, p. 27).  ""It is axiomatic that a litigant's failure to raise an issue in the trial court waives the litigant's right to raise that issue on appeal. (Citations omitted.) *FIA Card Servs., N.A. v. Kitchen,* 5th Dist. No. 08CA0105, 181 Ohio App.3d 557, 2009-Ohio-1295, 910 N.E.2d 9, ¶ 13.  Pahnke did not raise the issue of the proper signatory to the notice before the trial court, and cannot raise that issue now.

{¶65}  Pahnke's sixth assignment of error is denied.

**VII.**

{¶66}  In his seventh assignment of error, Pahnke argues that " * * * by its May 18 order holding that Defendant/Appellant's right to assert the defense of 'retaliatory eviction' against a Forcible Entry and Detainer Action pursuant to RC 5321.02 {A}, (sic) subsections (1){2} and {3} (sic) was superseded by the 'exception' found in RC 5321.03 {A}{ 4) (sic) barring said defense when a tenant 'holds over their rental term' committed prejudicial error by overlooking its harm to the fundamental principle of 'in pari materia.'"

{¶67} The Supreme Court of Ohio provided clear guidance regarding the application of the in pari materia rule in *State ex rel. Clay v. Cuyahoga Cty. Med. Examiner's Office,* 152 Ohio St.3d 163, 2017-Ohio-8714, 94 N.E.3d 498, ¶ 17:

> The in pari materia rule of statutory construction applies to "statutes relating to the same general subject matter," *State ex rel. Gains v. Rossi,* 86 Ohio St.3d 620, 622, 716 N.E.2d 204 (1999), citing *Cater v. Cleveland,* 83 Ohio St.3d 24, 29, 697 N.E.2d 610 (1998), but it is applied only "where some *doubt or ambiguity exists* **503 in the wording of a statute" (emphasis added), *167 State ex rel. Celebrezze v. Allen Cty. Bd. of Commrs.,* 32 Ohio St.3d 24, 27–28, 512 N.E.2d 332 (1987), citing *Hough v. Dayton Mfg.* Co.,

66 Ohio St. 427, 434, 64 N.E. 521 (1902); *see also Hulsmeyer*, 142 Ohio St.3d 236, 2014-Ohio-5511, 29 N.E.3d 903, at ¶ 22.

**{¶68}** Pahnke does not allege nor argue that any doubt or ambiguity exists in any statute, but only argues that the trial court's interpretation was incorrect. Therefore, we find that the in pari materia rule is inapplicable and Pahnke's seventh assignment of error is denied.

**{¶69}** The decision of the Mansfield Municipal Court is affirmed.

By: Baldwin, P.J.

Delaney, J. and

Wise, Earle, J. concur.