[Cite as *Falkenberg v. Kucharczyk*, 2022-Ohio-2361.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| MARIE FALKENBERG, | : | |
| Plaintiff-Appellant, | : | |
| | | No. 111014 |
| v. | : | |
| RACHEL KUCHARCZYK, ET AL., | : | |
| Defendants-Appellees. | : | |

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** July 7, 2022

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-19-913130

---

### *Appearances:*

Ryan, LLP, and Daniel J. Ryan, *for appellant.*

Milligan Pusateri Co., LPA, and Kimberly K. Wyss, *for appellee.*

MICHELLE J. SHEEHAN, P.J.:

{¶ 1} This case involves a motor vehicle accident. A jury found defendant-appellee Rachel Kucharczyk ("appellee") not negligent. Plaintiff-appellant Marie

Falkenberg ("appellant") appeals the jury verdict. On appeal, appellant raises the following two assignments of error:

I. The jury's verdict was against the manifest weight of the evidence.

II. The trial court erred and abused its discretion in denying Appellant's motion to compel and ignoring Ohio Civ.R. 26.

{¶ 2} Our review of the record and applicable law indicates these assignments of error are not well taken. Accordingly, we affirm the judgment of the trial court.

**Substantive Facts and Procedural History**

{¶ 3} Appellant and appellee were involved in a collision on Hoertz Road in Parma, Ohio on the evening of July 4, 2017. The road has a northbound lane and a southbound lane that are divided by a double yellow line. The posted speed limit for the road is 25 m.p.h. There is some elevation change in the area. For the vehicles traveling northbound approaching the area, there are two warning signs: one displays the warning "Caution. Vehicles Exiting Drives" and the other one "Hidden Drive."

{¶ 4} On the night of the accident, appellee had parked her vehicle in a grassy area across the street from a friend's house located on the west side of Hoertz Road, with the rear of the vehicle facing the road. When she left the house sometime before 11 p.m. to travel south on the road, she backed her vehicle into her friend's driveway first. Before she could move forward to proceed southbound, appellant's vehicle appeared in the northbound lane of the road and collided with appellee's

vehicle. Appellee claimed the collision occurred in her lane of travel, and appellant claimed it occurred in *her* lane of travel.

{¶ 5} In March 2019, appellant filed a complaint against appellee Rachel Kucharczyk; her father Gregory Kucharczyk; and Progressive Specialty Insurance Company ("Progressive"), appellant's insurance company. The complaint alleged that appellee negligently operated her vehicle so as to collide with appellant's vehicle (Count 1) and Gregory Kucharczyk negligently entrusted the vehicle to appellee (Count 2). Appellant also claimed she was entitled to compensation from Progressive for her injuries and damages (Count 3).

{¶ 6} In April 2019, appellant dismissed Progressive from the lawsuit. In February 2020, her original counsel moved to withdraw and her new counsel filed a notice of appearance. Appellant subsequently dismissed Gregory Kucharczyk, and her negligence claim against appellee was tried to a jury.

**Trial Testimony**

{¶ 7} Appellant presented the testimony of Officer Megan Kane and also testified on her own behalf to prove appellee was negligent in causing the collision. Regarding damages, appellant presented the video testimony of a cosmetic surgeon.

### a. Officer Kane

{¶ 8} Officer Megan Kane, who arrived at the scene to investigate the collision, testified that when she arrived, she saw appellee's vehicle in both the southbound lane and the northbound lane. The officer testified that she believed the impact occurred "on the center line." She did not take photographs or

measurements at the scene, but drew a diagram to show the approximate positions of the vehicles when the collision occurred. While she testified appellee's vehicle was "on the center line in both lanes," the diagram she drew did not clearly show appellee's vehicle in the northbound lane. The diagram also shows three skid marks from appellant's tires very close to the double yellow line. Appellant reported to Officer Kane that she was traveling at 27 m.p.h. Appellant's, but not appellee's, airbag deployed. Both vehicles were towed, and both drivers left the scene without going to the hospital.

### b. Appellant Falkenberg

{¶ 9} Appellant acknowledged she was not familiar with the area and was using a GPS to guide her to her destination. She testified that as she traveled north on Hoertz Road, "[s]omething had come out from the right side of me when I'm driving north, and it came across, and we had struck." Her vehicle ended up near a telephone pole on her side of the road. Appellant disputed appellee's account of the accident that appellee backed into the driveway first — she testified she did not recall appellee's vehicle ever being in the driveway. She acknowledged she testified at her deposition that appellee's vehicle came "straight out from the grass and fast into the road," that no part of appellee's vehicle was in the southbound lane, and that she thought her vehicle had hit the passenger side of appellee's vehicle. She also acknowledged that she had turned right from Sprague Road onto Hoertz Road to travel north and that the road from Sprague Road to the area of the accident was not flat and it was difficult for a motorist to see the road ahead.

**{¶ 10}** Regarding damages, appellant presented the video testimony of a cosmetic surgeon who had performed a breast augmentation surgery on her a year before the accident. She alleged the impact from the collision affected the implants and sought $350,000 in damages.

### c. Appellee Kucharczyk

**{¶ 11}** Appellee testified that on the night of the accident, she went to her friend's house on Hoertz Road to pick her up to go somewhere else. She testified she was familiar with the area because her friend lived there. When she arrived at the house, she parked her vehicle across the road in a grassy area abutting the road, with the rear of her vehicle facing the road. After spending a short time at her friend's house, she and her friend left, intending to travel south on Hoertz Road. Appellee backed out of the grassy area and across the road into her friend's driveway and then put her vehicle in drive. But, before she could move forward in the southbound lane, appellant's vehicle — which had made a right turn from Sprague Road moments earlier — appeared in the northbound lane and collided with appellee's vehicle.

**{¶ 12}** Appellee testified that before she backed out of the grassy area, she first ensured there were no vehicles turning right from Sprague Road to travel north on Hoertz Road. She looked in her rearview and side mirrors at both the northbound and southbound lanes to make sure there were no vehicles coming from either direction. There were other vehicles in the driveway at the time, but she was able to back into the driveway "at least halfway." With her vehicle partly in the

driveway and partly in the southbound lane, she proceeded to switch the vehicle's gear from reverse to drive. At that moment, she saw appellant's vehicle approaching in the northbound lane, but she could not move her vehicle backwards and the collision occurred.

{¶ 13} Appellee testified that part of her vehicle was in her friend's driveway and part of it was in the southbound lane of the road. She testified that she knew her vehicle was not in the northbound lane because she could see the yellow line. She testified that she did not back fully into the southbound lane but rather backed into the driveway first because the latter was an easier maneuver. She testified that she saw appellant's vehicle approaching in the northbound lane as soon as she shifted her vehicle from reverse to drive, and she said to her friend who was sitting at the passenger's side "that car's going to hit us."

{¶ 14} Appellee's vehicle was struck on the driver's side of the front bumper. The police arrived for an investigation of the accident, and after the police left, appellee took several pictures of the skid marks on the road. According to appellee's testimony, the pictures (defendant's exhibit Nos. E1, E2, and E3) depicted skid marks on the northbound lane and leakage of fluid from the front end of appellee's vehicle on the southbound lane; one picture showed an additional skid mark from appellant's vehicle on the southbound lane.

{¶ 15} Appellee testified she disagreed with Officer Kane's drawing of the collision, which showed the front of her vehicle on the yellow line. Appellee testified her vehicle did not cross the median yellow line and that she believed appellant's

vehicle came into her lane.  Appellee testified she contacted the police department to convey her disagreement with the drawing.

{¶ 16} After the testimony of the witnesses, the trial court instructed the jury that the burden of proof is on the plaintiff to prove the facts necessary for the case by a preponderance of the evidence.  The trial court also instructed the jury on the right of way, explaining the right of way means "the right of a vehicle to proceed uninterrupted in a lawful manner in the direction in which it is moving in preference to another vehicle approaching from a different direction into its path."  In addition, the trial court instructed that "to keep her right of way as a preferred party to continue to travel [un]interruptedly, the driver must * * * operate her vehicle in a lawful manner.  If she does not do so, she loses the right of way and her status as a preferred party."  Regarding speed, the court instructed the jury that "[a] driver must operate a motor vehicle at a reasonable or proper speed, neither too fast or too slow, having due regard to the traffic, surface, and width of the street or highway and to any other conditions."

{¶ 17} The jury returned the verdict in favor of appellee.[1]  This appeal follows.

---

[1] The interrogatories to the jury are not part of the record but they were referred to at the closing argument by the defense counsel.  Counsel stated that the first interrogatory was whether the defendant was negligent; if the answer was negative, the jury was to render the verdict for the defendant, and if the answer was affirmative, the interrogatories would go on to ask if the plaintiff was also negligent and what was the relative fault between the two parties.  The record reflects that, after the jury returned the verdict, the trial court announced that seven out of the eight jurors found in favor of appellee and answered no to the question "was the defendant negligent?"

**Manifest Weight Review**

{¶ 18} Appellant argues the jury lost its way and its verdict is against the manifest weight of the evidence. She asks that this court vacate the jury verdict and remand the matter for a new trial.[2]

{¶ 19} Appellant correctly cites *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, for our standard of review for a civil trial when a party claims the jury's verdict is against the manifest weigh of the evidence.

{¶ 20} In *Eastley*, the Supreme Court of Ohio held that the criminal standard of review set forth in *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997) applies in civil cases as well. Accordingly, when reviewing a claim that a jury verdict in a civil trial is against the weight of the evidence, an appellate court "'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 219, 485 N.E.2d 717, 720-721 (1st Dist.1983). *E.g., 5500 S. Marginal Way, L.L.C. v. Parker*, 8th Dist. Cuyahoga No. 110736, 2022-Ohio-1071, ¶ 15; *Krantz v. Pahnke*, 5th Dist. Richland No. 2021 CA 0043, 2022-Ohio-15, ¶ 61-

---

[2] Civ.R. 12(C)(2) provides that "[i]n any civil action or proceeding that was tried to a jury, and when upon appeal all three judges hearing the appeal find that the judgment or final order rendered by the trial court on the jury's verdict is against the manifest weight of the evidence * * *, the court of appeals shall reverse the judgment or final order of the trial court and remand the case to the trial court for further proceedings."

62; and *Chasteen v. Dix Rd. Property Mgt.*, 12th Dist. Butler Nos. CA2020-04-055 and CA2020-04-056, 2021-Ohio-463, ¶ 43.

{¶ 21} As a plaintiff's burden of proof in a civil case is a preponderance of evidence, our review is therefore to determine whether the jury "clearly lost its way" in finding appellant Falkenberg failed to prove her claim by a preponderance of evidence. "'Preponderance of the evidence' means the greater weight of the evidence, or evidence that leads the trier of fact to find that the existence of a contested fact is more probable than its nonexistence." *Croone v. Arif*, 8th Dist. Cuyahoga No. 101103, 2014-Ohio-5546, ¶ 18, citing *State v. Stumpf*, 32 Ohio St.3d 95, 102, 512 N.E.2d 598 (1987). As the court in *Eastley* further explained:

> "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence*,' in support of one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief*."

(Emphasis sic.) *Eastley* at ¶ 12, quoting *Thompkins* at 387, quoting *Black's Law Dictionary* 1594 (6th Ed.1990).

{¶ 22} Furthermore, "[i]n weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact." *Eastley*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, at ¶ 21. "'"[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of

the judgment and the finding of facts. * * *."'" *Id*. quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191-192 (1978). "'"If the evidence is susceptible to more than one construction, the reviewing court is bound to give it the interpretation which is consistent with the trial court's verdict and judgment."'" *Id.,* quoting *Seasons Coal* at *id.,* quoting 5 Ohio Jurisprudence 3d Appellate Review, at *id. See also Vogel v. Campanaro*, 2021-Ohio-4245, 180 N.E.3d 594, ¶ 65 (12th Dist.).

{¶ 23} The plaintiff in a negligence claim must prove (1) duty, (2) breach of duty, (3) causation, and (4) damages. *Anderson v. St. Francis-St. George Hosp., Inc.*, 77 Ohio St.3d 82, 84, 671 N.E.2d 225 (1996). After being instructed on negligence and pertinent traffic law, including the right of way and speed, the jury in this case found appellant failed to prove, by a preponderance of evidence, that appellee was negligent in operating her vehicle. Our review here is to determine whether the jury's finding is against the manifest weight of the evidence pursuant to the standard set forth in *Eastley*.

{¶ 24} In this case, appellant testified that as she traveled north on Hoertz Road, appellee's vehicle came from the right side of the road and appellant's vehicle collided with appellee's vehicle. Appellant did not recall seeing appellee's vehicle in the driveway across the street and acknowledged that she had testified in her deposition that no part of appellee's vehicle was in the southbound lane and she thought she hit the passenger side of appellee's vehicle.

{¶ 25} While the officer testified that she believed the collision occurred "on the center line," appellee testified the collision occurred in her lane of travel. She testified that she looked at both directions of the road before backing into her friend's driveway, and that her vehicle was part in the driveway and part in the southbound lane when the collision occurred. Appellee presented photographs taken by her after the accident depicting the location of skid marks to show that appellant's vehicle was in the southbound lane before driving off to the right side of the northbound lane. There is also undisputed evidence presented at trial that, before the collision, appellant had passed two warning signs for hidden driveways and that she traveled over the speed limit in an area she was unfamiliar with while it was dark outside.

{¶ 26} Our review thus reflects the record contained sufficient evidence for the jury to determine whether appellant lost her right of way and whether appellee was negligent in operating her automobile. "Reversal on the manifest weight of the evidence and remand for a new trial are not to be taken lightly." *Eastley,* 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, at ¶ 31. Weighing the evidence presented in the trial pursuant to the standard set forth in *Eastley* and mindful that "every reasonable presumption must be made in favor of the judgment and the finding of facts," we are unable to conclude that the jury, in resolving conflicts in the evidence, "clearly lost its way" and created a manifest miscarriage of justice warranting a reversal. Therefore, we affirm the jury verdict in favor of appellee. The first assignment of error is not well taken.

**Discovery**

{¶ 27} Appellant's second assignment of error concerns the trial court's denial of her motion to compel. The record reflects that in February 2020, appellant's original counsel withdrew from the case and her current counsel filed a notice of appearance in the same month. The case was not set for trial until July 2021. Two months before trial, appellant's new counsel filed a motion to compel discovery, requesting that appellee provide "all pictures taken at the accident scene and all pictures taken of the vehicles involved in the accident." Appellant's counsel alleged in the one-paragraph motion to compel that "[n]umerous requests have been made through discovery and submitted to the defendant with no response from the attorney for the defendant." The allegation, however, was not supported by an affidavit, certification, or exhibits.

{¶ 28} Appellee opposed the motion on the ground that appellant's counsel's statement regarding receiving no response to counsel's request for discovery was not supported by a certification required by Civ.R. 37(A)(5)(b), and furthermore, it was a misrepresentation. Appellee's counsel attached an affidavit stating that on January 6, 2020, appellee had answered appellant's interrogatories and responded to request for production of documents; appellant's new counsel did not serve any additional written discovery requests; and appellant's counsel did not contact her before filing the motion to compel.

{¶ 29} The trial court denied appellant's motion to compel. On appeal, appellant argues the trial court abused its discretion in denying the motion.

{¶ 30} It is well settled that a trial court has broad discretion in controlling the discovery process. *State ex rel. Daggett v. Gessaman*, 34 Ohio St.2d 55, 295 N.E.2d 659 (1973); *Mauzy v. Kelly Servs., Inc.*, 75 Ohio St.3d 578, 592, 664 N.E.2d 1272 (1996). The trial court abuses its discretion in discovery matters only if it acts in an unreasonable, arbitrary, or unconscionable manner. *State ex rel. Denton v. Bedinghaus*, 98 Ohio St.3d 298, 2003-Ohio-861, 784 N.E.2d 99, ¶ 31.

{¶ 31} On appeal, appellant alleges appellee failed to provide the photographs taken by appellee after the collision, citing Civ.R. 26(3). The rule governs initial discovery by a party and requires a party, without awaiting discovery requests, to produce all documents in that party's possession that may be used by that party to support its claims or defenses. Appellee counters appellant's allegation by pointing out that the photographs were utilized during the depositions of the parties in November 2019 and her counsel had provided an affidavit verifying she had provided full discovery responses in January 2020 and, further, that appellant's motion to compel failed to contain the requisite certification that appellant had attempted to resolve the discovery dispute prior to filing the motion.

{¶ 32} Civ.R. 37(A)(1) authorizes a party to move for a court order compelling discovery. Pursuant to the rule, the motion to compel "shall include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make discovery in an effort to obtain it without court action." The rule imposes a duty to attempt extrajudicial resolution of any discovery dispute before filing a motion to compel discovery.

{¶ 33} There is no certification in appellant's motion to compel or response to appellee's counsel's affidavit that the photographs were previously produced or that appellant had made a good-faith attempt to resolve the discovery dispute prior to filing the motion to compel. Thus, the trial court did not abuse its discretion in denying appellant's motion to compel. *E.g., PennyMac Loan Servs., L.L.C. v. Marker*, 7th Dist. Jefferson No. 18 JE 0024, 2019-Ohio-4088, ¶ 35 (Civ.R. 37(A)(1) requires a good faith attempt to resolve a discovery dispute prior to filing a motion to compel and therefore the trial court's denial of appellant's motion to compel was not an abuse of discretion.). Appellant's second assignment of error is not well taken.

{¶ 34} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHELLE J. SHEEHAN, PRESIDING JUDGE

CORNELIUS J. O'SULLIVAN, JR., J., and
MARY J. BOYLE, J., CONCUR